**Allen James STAPLES and Frank Joel McNamara, Appellants,**

v.

**UNITED STATES of America, Appellee.**

No. 20114.

United States Court of Appeals
Fifth Circuit.

July 10, 1963.

James S. Taylor, Jacksonville, Fla., Allen J. Staples, Frank J. McNamara, Raiford, Fla., for appellants.

Samuel S. Jacobson, Asst. U. S. Atty., Jacksonville, Fla., Edith House, U. S. Atty., Southern Dist. of Florida, for appellee.

Before RIVES, CAMERON and HAYS *, Circuit Judges.

RIVES, Circuit Judge.

Staples and McNamara were convicted by a jury's verdict of conspiring to possess, conceal, utter and sell counterfeit obligations of the United States in violation of Section 371, Title 18 U.S.Code, and of possessing and uttering counterfeit obligations of the United States in violation of Section 472, Title 18 U.S. Code. Upon appeal, they present four questions: 1) whether certain evidence should have been suppressed because obtained as a result of unreasonable search and seizure; 2) whether the district court abused its discretion in refusing to grant them a continuance; 3) whether the district court erred by excessive participation in the trial; and 4) whether the court erred in denying each defendant's motion for judgment of acquittal. We think that decision of the appeal really turns on the first question, that is, the reasonableness *vel non* of search and seizure.

At about 10:30 P.M. on July 5, 1960, a young sailor named Roy Edgar Cox was arrested by the Jacksonville Beach police for investigation of passing a counterfeit $20.00 Federal Reserve Note. Cox and the note passed by him were taken to the Jacksonville Beach police station. United States Treasury agents who were immediately called into the case identified the impounded note as identical to a counterfeit bill enough of which had appeared to cause an area alert.

Under questioning, Cox informed the agents that the bill for which he was arrested was one of certain similar bills which had been given him by three young men. Cox further said that while he

was not sure the gift bills were counterfeit, he "assumed that there was something wrong with them at the time." Cox described the three men as young white men of average size, one with very bushy black hair, and one with brown curly hair, and all wearing plaid sport shirts. He also stated that they were driving a 1957 light color two-door Ford in which he had ridden with them to Jacksonville and back to Jacksonville Beach.

The police then set out to canvass the downtown Jacksonville Beach bars in an effort to locate the three men. At Smitty's Beach Club they found another of the bills and received a generalized description of the party who passed the bill. They continued to the Rendezvous Bar where they saw McNamara, who fit the descriptions given, receiving change from a large bill. They then asked the waitress for the bill which she had just received from McNamara and, upon examining it, found it to be identical to the other known counterfeits.

McNamara was then arrested and searched. The search disclosed a large amount of money in small bills, the registration to a 1957 Ford, and a set of car keys. Meanwhile, the police were informed that when McNamara was arrested a man who was with him had slipped out the door. This other individual, whose name proved to be Frank Hilton, was taken into custody about a half a block from the Rendezvous Bar.[1] McNamara and Hilton were both arrested and booked for "investigation of passing counterfeit notes." There was no counterfeit money found on either McNamara or Hilton.

The description of the 1957 Ford having been broadcast over the police radio, it was located almost immediately, parked in front of the Vagabond Motel. The officers searched the unlocked car, without a warrant. They found on the floor in the front a key to Room 14 of the

* Of the Second Circuit, sitting by designation.

[1]. Hilton was originally charged with Staples and McNamara, but was killed before trial.

Vagabond Motel. In the glove compartment they found a Western Union money order receipt showing that someone named Allen Staples had on July 5, 1960, sent $600.00 from Jacksonville Beach to Miami. They found no counterfeit money.

The officers then proceeded to Room 14 of the Vagabond Motel, after finding out by telephone that Room 14 was registered to McNamara. At Room 14 they knocked on the door and were invited in. There they were faced by a very bushy-haired, undershort-clad young man who identified himself as Staples. He was immediately placed under arrest "for investigation" and was later booked for investigation of passing counterfeit notes. Visible when the officers entered the room was a great quantity of inexpensive, apparently new miscellaneous items of merchandise scattered about.

The officers then proceeded to search the room, finding, in addition to the miscellany, 143 counterfeit $20.00 notes (in a brown bag in a dresser drawer), $127.00 legitimate money in small bills and coins, and a matchbox of marihuana.

None of the men arrested had been charged with any crime but had been booked for investigation of passing counterfeit bills.

A timely motion to suppress the evidence seized from the automobile and the motel room was made on behalf of each defendant, and was denied in toto.

The Government insists that each step in the investigation followed justifiably from the preceding step. The arrests of McNamara and of Hilton bore out substantially leads supplied by Cox, and indicated that another man was still at large. It was urgent to arrest that man before he escaped and before he disposed of any remaining counterfeit bills. The Government points out also that the investigation took place at an hour when it was difficult to obtain a search warrant, and during a holiday period with attendant trying conditions for a summer beach resort police force. We are nonetheless constrained to hold that both searches were unreasonable as to McNamara and that at least the search of the motel room was unreasonable as to Staples.

■ The so-called "silver platter" doctrine has been repudiated and the Weeks doctrine [2] has been extended to require the exclusion of evidence in a federal criminal trial when it is obtained by State officers during a search which, if conducted by federal officers, would have invaded a person's immunity from unreasonable searches and seizures under the Fourth Amendment.[3]

In the recent case of Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed. 2d 726, the Court said:

"The evidence at issue, in order to be admissible, must be the product of a search incident to a lawful arrest, since the officers had no search warrant. The lawfulness of the arrest without warrant, in turn, must be based upon probable cause, which exists 'where "the facts and circumstances within their [the officer's] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed.' Brinegar v. United States, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 1311, 93 L. Ed. 1879 (1949), quoting from Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925) * * *."

See also, Wong Sun v. United States, 1963, 371 U.S. 471, 479, 83 S.Ct. 407, 9 L.Ed.2d 441.

2. Weeks v. United States, 1914, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652.

3. Elkins v. United States, 1960, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669; Rios v. United States, 1960, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688; see also, Mapp v. Ohio, 1961, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081; Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726.

■ The Government seeks to justify the search of the automobile as incident to a lawful arrest of McNamara. There are at least two answers, each independently sufficient. First, at the time of the search of the automobile, McNamara was not under *lawful* arrest, but had been booked for "investigation of passing counterfeit notes." Perhaps McNamara could have been validly arrested for passing the counterfeit bill, but what we said in Collins v. United States, 5 Cir., 1961, 289 F.2d 129, 132, is pertinent here.

> "We need not decide whether Collins could have been so validly arrested for the evidence does not show that either of those charges was ever placed against him. Nor does the evidence show that he was ever informed of his arrest for any offense other than the charge on which he was 'booked,' viz: 'under investigation of loitering.' However, even if we should assume a valid prior arrest, that came to an end when he was confined in jail under the charge 'under investigation of loitering.' He was not then charged with the commission of any legally defined crime. * * * "[4]

See also, United States v. Di Re, 1948, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210.

■ Second, the search of the automobile was not *incident* to McNamara's arrest. The right to search *incident* to an arrest does not extend to places other than that of arrest. Agnello v. United States, 1925, 269 U.S. 20, 30, 46 S.Ct. 4, 70 L.Ed. 145; Silverthorne Lumber Co. v. United States, 1920, 251 U.S. 385, 390, 40 S.Ct. 182, 64 L.Ed. 319.

■ It seems to be implicitly argued that, even though not incident to an arrest, there was probable cause to search the automobile under the doctrine of Carroll v. United States, 1925, 267 U.S.

132, 153, 45 S.Ct. 280, 69 L.Ed. 543. There was no more than suspicion that the automobile might contain counterfeit notes.

Moreover, with McNamara in custody and the officers in possession of the keys to the automobile, it may be also that its search was illegal because the car was "not likely to be disturbed" before a search warrant could be obtained. See Rent v. United States, 5 Cir. 1954, 209 F.2d 893; Shurman v. United States, 5 Cir. 1955, 219 F.2d 282.

■ It is therefore clear that the evidence obtained from the search of the automobile must be suppressed as to McNamara. It is clear also that the evidence obtained from the subsequent search of the motel room, registered in McNamara's name, because it is "fruit of the poisonous tree," that is, "come at by exploitation of that illegality." Wong Sun v. United States, supra, 371 U.S. at 488, 83 S.Ct. at 417.

■ That such evidence was inadmissible against McNamara does not compel a like result with respect to Staples. As said in Wong Sun v. United States, supra, 371 U.S. at 491, 492, 83 S.Ct. at 419, 420:

> "We must then consider the admissibility of the narcotics surrendered by Yee. Our holding, supra, that this ounce of heroin was inadmissible against Toy does not compel a like result with respect to Wong Sun. The exclusion of the narcotics as to Toy was required solely by their tainted relationship to information unlawfully obtained from Toy, and not by any official impropriety connected with their surrender by Yee. The seizure of this heroin invaded no right of privacy of person or premises which would entitle Wong Sun to object to its use at his trial. Cf. Goldstein

---

4. Florida law does not provide for arrest "for investigation." It requires an officer making an arrest without a warrant to inform the person arrested of the cause of the arrest. Sec. 901.17 Florida Statutes, F.S.A.

**v. United States, 316 U.S. 114 [62 S.Ct. 1000, 86 L.Ed. 1312]** [18]

"18. This case is not like Jones v. United States, 362 U.S. 257, [80 S.Ct. 725, 4 L.Ed.2d 697] where the person challenging the seizure of evidence was lawfully on the premises at the time of the search. Nor is it like Chapman v. United States, 365 U.S. 610, [81 S.Ct. 776, 5 L.Ed.2d 828] where we held that a landlord could not lawfully consent to a search of his tenant's premises. See generally Edwards, Standing to Suppress Unreasonably Seized Evidence, 47 N.W.U.L.Rev. 471 (1952)."

The automobile was registered in McNamara's name and the keys were taken from him. Though the point is not argued in the briefs, it is extremely doubtful whether the search of the automobile invaded Staple's right of privacy so as to give him standing to suppress evidence thus obtained. The only evidence against Staples found in the automobile was the Western Union money order receipt for $600.00 made out to Allen Staples, and the key to the motel room in which Staples was arrested. That much may have been admissible as against Staples.

The 143 counterfeit $20.00 Federal Reserve Notes were found in the search of that motel room, as were the miscellaneous items of new merchandise. As to Staples, the evidence found in the motel room may not have been "fruit of the poisonous tree," and certainly the search of the motel room was incident to Staples' arrest. The only question remaining is whether Staples' arrest was lawful.

By that time, Cox's information had been confirmed by the apprehension of McNamara and Hilton and the location of the automobile. There was the additional lead of the receipt for the money order made out to Staples. Some further confirmation was furnished by the miscellaneous items of new merchandise visible when the officers entered the motel room. All of this information may have been sufficient to support a reasonable belief of the officers that Staples was a guilty participant in the passing of the counterfeit bills.

█ Whether the officers actually entertained such a belief is questionable in view of the fact that instead of arresting Staples on a legal charge, they arrested him simply for investigation. As heretofore indicated, that was not a lawful arrest. It follows that the evidence found in the motel room should have been suppressed as against Staples.

The judgments of conviction as to both McNamara and Staples are therefore reversed and the causes remanded.

Reversed and remanded.

CAMERON, Circuit Judge, dissents.