**UNITED STATES of America**

v.

**Salvatore GRANELLO, a/k/a Sally Burns, and Hyman Levine, a/k/a George Levine, Defendants.**

United States District Court
S. D. New York.
July 1, 1965.

Robert M. Morbenthau, U. S. Atty., Charles Stillman, Asst. U. S. Atty., of counsel, for plaintiff.

Irwin Klein, New York City, for defendant Salvatore Granello.

Irwin L. Germaise, New York City, for defendant Hyman Levine.

DIMOCK, District Judge.

These are motions by defendants Granello and Levine attacking their indictment for evasion of income tax and their conviction of failure to file income tax returns. The attack is based upon the introduction before the grand jury and at the trial of papers which have since been held to have been illegally obtained from one Lowell M. Birrell. The motions raise the difficult and unsettled question whether evidence which has been held to have been obtained from A in violation of A's constitutional rights not to be subjected to unreasonable searches and seizures is admissible against B.

The facts are these.

On April 11, 1963 an information under Section 7203 of Title 26 United States Code was filed against the defendants charging each of them with failure to file returns in connection with income received for each of the years 1956 and 1957. In addition the information contained a conspiracy count.

On March 9, 1964 an indictment under Section 7201 of Title 26 United States Code was returned against the defendants charging each of them with wilful evasion of tax in connection with 1957 income. In addition the indictment contained a conspiracy count.

The charges in both information and indictment first came on for trial in September, 1964 before Judge Murphy. On the morning when trial was to commence, the defendants moved to suppress for use as evidence against them all of the papers seized in Bucks County, Pennsylvania, during July and August of 1959 by means of compulsory process directed at Lowell M. Birrell. The files, records and information so obtained related to Birrell's manifold enterprises and the various entities, corporate and non-corporate, through which he operated.

Judge Murphy reserved decision on all issues raised by the motion and the case proceeded to trial. Before submission to the jury, the conspiracy counts were dropped, the information conspiracy count on the Government's motion and the indictment conspiracy count on that of Judge Murphy. The jury in this first trial was unable to agree on a verdict, and, at this juncture, Judge Murphy declined to decide the reserved motion.

Subsequently Birrell moved to have the seized documents suppressed as evidence against him and returned to him and to have various indictments against him dismissed. Neither the indictment, nor the information here charges Birrell. Consequently, neither was made by Bir-

rell the subject of his motion. That motion came on to be heard before Judge Wyatt on November 30, 1964 and decision was reserved. This was the status of the matter when the indictment and information against Granello and Levine were assigned to me for trial.

Shortly before the date set for trial, the defendants renewed before me the motion left undecided by Judge Murphy. In addition, they asked the trial be postponed pending the rendition by Judge Wyatt of decision on the Birrell motions.

Having determined that Granello and Levine were not persons against whom the search for the Birrell records were directed or victims of the seizure but merely persons claiming prejudice through use of evidence gathered as a consequence of a search and seizure directed at another, I concluded that, under the test outlined in Jones v. United States, 362 U.S. 257, 261, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), they lacked standing to challenge the lawfulness of the seizure. Hence, I denied the motions and directed that the case proceed to trial as scheduled.

After a trial of some five weeks duration, verdicts of guilty were returned against each of the defendants on each of the information counts. The jury was, however, unable to agree on a verdict with respect to the indictment counts. These remain open.

The great bulk of the evidence adduced by the Government at trial consisted either of documents obtained by the Bucks County seizure or of information derived therefrom, and I think it undisputed that no conviction could have been obtained without this evidence.

The defendants renewed their motions to suppress at various times throughout the trial and again on May 24 when post-trial motions were heard and do not at this point concede the correctness of the ruling I made originally and have consistently adhered to.

Judge Wyatt handed down, on June 11, 1965, his decision granting the Birrell motion to suppress.[1]

Promptly thereafter, the defendants on the strength of that determination brought the motions considered here.

It will be of assistance at the outset to make it clear that the question raised is not the familiar one whether B who seeks to have evidence against him excluded has standing to raise the point that the seizure of the evidence from A violated A's constitutional rights. Jones v. United States, supra. Here that question has been raised and decided on motion of one who had the requisite standing. We are here faced with the question whether evidence which has been held to have been obtained from A in violation of A's constitutional rights is admissible against B.

Various answers to that question have been suggested in the opinions of the courts.

The first and simplest answer that has been suggested is that the Government cannot use against anyone evidence that has been illegally seized. This was the view taken by Justice Rutledge in his concurring opinion in McDonald v. United States, 335 U.S. 451, 456–57, 69 S.Ct. 191, 93 L.Ed. 153 (1948). That view has, however, been expressed by no other judge.

A second answer that has been made is that evidence seized in violation of A's rights could be used against B if it was physically available. This I understand to have been the view of the four justices who concurred on the subject of use of illegally seized evidence in their opinion in the McDonald case where there was no majority opinion on this point.

A corollary of this view is that evidence seized in violation of A's rights can be used against B where it is contra-

---

1. Subsequent to the argument on June 22 of the instant motions, he granted reargument but adhered to his June 11 decision. While decision is still reserved on Birrell's motion for return of the seized documents, this decision, as this opinion will indicate, will not offset my determination here.

band or where for some other reason A is not entitled to its return. This was suggested by the Court of Appeals for the Second Circuit in United States v. Lee Wan Nam, 274 F.2d 863 (1960). There, where narcotics seized from A in violation of A's rights were held admissible against B, the court distinguished the McDonald suggestion by saying "[i]f the property had been returned to McDonald, it would not have been available for use at the trial" while, in the case before it, the contraband narcotics "could not be returned despite the illegal seizure". In another case, however, Hair v. United States, D.C.Cir., 110 U.S.App. D.C. 153, 289 F.2d 894 (1961), the court refused to construe anything in the McDonald case as indicating that the question turned on availability of the evidence to the Government and held that it was error to permit stolen goods which had been seized from A in violation of A's rights to be used against B.

A third possible answer to the problem would be that the fact that a seizure violated A's rights would never render the seized evidence inadmissible against B. That seems to have been the view taken by the Supreme Court in Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), a case decided after all those cited above. There the Government had got possession of narcotics from one Yee as a result of information obtained from defendant Toy in violation of Toy's rights. The narcotics were admitted as against both Toy and defendant Wong Sun. The court held that Toy's conviction must be reversed because of the admission of the illegally obtained evidence. Though Wong Sun's conviction was reversed on another ground, the Court stated that the narcotics were properly admitted as against him, saying, p. 492, 83 S.Ct. p. 419, "The exclusion of the narcotics as to Toy was required solely by their tainted relationship to information unlawfully obtained from Toy, and not by any official impropriety connected with their surrender by Yee. The seizure of this heroin invaded no right of privacy of person or premises which would entitle Wong Sun to object to its use at his trial."

It is true that the result that the narcotics were properly admitted as against Wong Sun might have been reached on the theory espoused by the four justices in the McDonald case since the narcotics as contraband would not have been surrendered by the Government and would have been available in a prosecution of Wong Sun. The Supreme Court did not mention this theory, however, and indeed did not refer to the McDonald case at all.

I regard the expression of the Supreme Court in the Wong Sun case as announcing the rule that the fact that evidence has been seized from A in violation of A's rights does not prevent its admission in a prosecution of B.[2]

The Court of Appeals for the Fifth Circuit seems to have leaned toward that view in Staples v. United States, 320 F.2d 817 (1963). There the court quoted the matter above extracted from the Wong Sun opinion and stated that keys and a money order receipt held to have been illegally seized from defendant McNamara's automobile *may* have been admissible against defendant Staples. Other evidence which had been admitted was held to have been illegally seized from Staples' motel room, however, so that his conviction was reversed.

The rule must be either that evidence seized from A in violation of A's rights must never be admissible against B or that evidence so seized must always be admissible against B. There is no practical basis for the suggestion of the four

2. This would accord with the statement of Justice Frankfurter in the opinion of the Court in Wolf v. People of State of Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949) where he said at pp. 30–31, 69 S.Ct. at p. 1362, "Indeed, the exclusion of evidence is a remedy which directly serves only to protect those upon whose person or premises something incriminating has been found", a statement unaffected by the Court's departure from the Wolf decision in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

justices in the McDonald case that the answer depends upon the availability of the evidence for presentation to the court after a determination of the illegality of the seizure. In the McDonald case, even if the seized property had been returned to McDonald it would have been available to the Government by means of compulsory legal process. There is no such thing as property unavailable to the Government except property that has been destroyed, and destruction can be prevented by the service of compulsory process on the aggrieved party at the same time that the illegally seized property is returned to him.

That leaves the question whether the illegality always works inadmissibility in the prosecution of B or never works inadmissibility in the prosecution of B.

To support the rule that illegality always works inadmissibility it is of no assistance to say that evidence obtained in violation of someone's rights is the fruit of a poisonous tree and thus has a special status like the mystical status of deodand given by the common law to a chattel which had caused death. That is merely another way of expressing a possible result of the consideration of the question which must be decided in the light of public interest.

The only tenable basis for the rule that illegality always works inadmissibility would be a determination that the policy against illegal searches and seizures by the Government was so strong that the law ought to deter the Government from conducting such searches and seizures by prevention of the use of their fruits in any way.

Deterrence of official illegality has been the primary reason for the raising to constitutional dignity of the exclusionary rule as it has been applied up to now. Compare Mapp v. Ohio, 367 U.S. 643, 655–56, 81 S.Ct. 1684 (1961), with Wolf v. Colorado, 338 U.S. 25, 28, 69 S.Ct. 1359 (1949). This policy that, in Cardozo's phrase, "the criminal is to go free because the constable has blundered", People v. Defore, 242 N.Y. 13, 21, 150 N.E. 585, 587 (1926), has been thought

by many to be an unwise and inefficient sanction, one which inhibits the proper protection of the public and distributes incidental benefits to wrongdoers far more than it safeguards the properly cherished right of privacy. Whatever view be taken as to the wisdom or efficiency of the rule as it has been applied up to now, it is clear that to broaden it, as defendants seek, to include as incidental beneficiaries of the deterrance policy persons whose privacy rights were wholly unaffected by the official illegality would render the rule at least a far more inefficient sanction. Perhaps such a broadening is desirable but that is a matter ultimately for the Supreme Court and on the present state of the authorities I cannot anticipate its doing so.

The motions are denied.