**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Robert GRAHAM, Defendant-Appellant.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Grady Lee TUCKER, Defendant-Appellant.**

**Nos. 17508, 17509.**

United States Court of Appeals Sixth Circuit.

Feb. 26, 1968.

Rehearing Denied May 3, 1968.

440

Franklin Murchison (Court Appointed) Jackson, Tenn., for appellant Graham.

Donald L. Stepner (Court Appointed) Covington, Ky., for appellant Tucker.

William A. McTighe, Jr., Memphis, Tenn. (Thomas L. Robinson, U.S. Atty., Memphis, Tenn., Fred M. Vinson, Jr., Asst. Atty. Gen., Dept. of Justice, Criminal Division, Washington, D.C., on the brief), for appellee.

Before EDWARDS and PECK, Circuit Judges, and CECIL, Senior Circuit Judge.

JOHN W. PECK, Circuit Judge.

In this criminal action, codefendants Graham, Tucker and Edge were indicted for violations of the Dyer Act, 18 U.S.C. §§ 2312 and 2; the latter section relating to aiding and abetting. The case was tried before a jury which found all three men guilty on two of the three counts charged. Defendants Graham and Tucker perfected appeals to this court;[1] since both appellants raise substantially the same issues, the discussion herein will be applicable to both cases.

Briefly stated, the undisputed facts established by the government are as follows: On the night of July 22, 1966, Edge, a used car dealer in Booneville, Mississippi, along with two companions, traveled by car to a truck stop near Champaign, Illinois. At this time Edge met Graham and Tucker, each of whom had in his possession a 1965 Chevrolet automobile. Following the transfer of these cars from Graham and Tucker to Edge, appellants were taken to the Champaign railroad station, and Edge and friends departed for Booneville, Mississippi.

At approximately 8:30 p.m. on July 23, the Jackson, Tennessee, Police Department received a report that a man was being beaten by another with a stick at a specified location. Responding officers were flagged down by one Armstrong, one of the men who had accompanied Edge to Illinois and who at that time was operating one of the three cars being driven back to Mississippi. Armstrong, bleeding from the nose and ears, related to police that he had been beaten by Edge. An attempt by police to apprehend Edge, who in turn was apparently seeking to locate Armstrong and the car he was driving, resulted in the conver-

---

[1]. Defendant Edge filed a notice of appeal 22 days after the District Court dismissed his motion for a new trial, and his appeal was dismissed upon motion by the government.

gence by everyone involved (i. e., police, defendant Edge and acquaintances) upon the premises of a gasoline station.

Edge was arrested at the gas station for assault and battery; the alleged weapon (an ax or pick handle) was found in his car. The entire group involved in the three-car caravan was taken to police headquarters, the vehicles being left lock- ed at the service station. After booking the parties, police officers returned to the gasoline station for the purpose of removing the cars to the police station.

At the time of his arrest, Edge, who professed ownership of all three cars in question, had no titles for any of the automobiles, but displayed to the police incomplete bills of sale for the two Chev- rolets. Upon returning to the cars which had been left locked at the service station, the police discovered that the keys obtained from the cars at the time of the arrest (which keys did not in ap- pearance correspond to those of relatively late model cars) would not open the car doors. Shortly after the three automo- biles arrived at the police station Ser- geant Dailey of the Jackson police de- partment opened the car doors and re- corded the serial numbers affixed to the doorposts. No search warrant had been procured.

■ Appellants' first contention is that the examination of the cars which disclosed the serial numbers constituted an illegal search, and that Sergeant Dailey's testimony as to the serial num- bers was improperly received.[2] Appel- lants contend that Edge's arrest was il- legal under the law of Tennessee, and that the search of the automobiles was not incidental thereto. As to the legality of the arrest, since the record shows that the arresting officers had probable

cause to believe that Edge had committed a felonious assault upon Armstrong, the District Court correctly upheld the va- lidity of the arrest. With respect to the legality of the search, the government argues that the search and arrest were contemporaneous in time and place, and that the search was not unreasonable.

A preliminary issue is whether, under the facts of this case, the opening of the car doors to ascertain the serial numbers affixed to the doorposts constituted a search within the meaning of the Fourth Amendment.

■■ Where police obtain an article for safekeeping from a suspect taken into custody pursuant to a lawful arrest, we find no authority which requires them to get a search warrant before examining the article for the purpose of finding a serial number by which the article might be accurately identified. Even where, as here, an examination of an article solely for purposes of identification is commenced after the police have prob- able cause to believe that the item has been stolen, no right of privacy secured to the person arrested by the Fourth Amendment to the Federal Constitution is breached. While it is true that the Constitutional proscription against un- reasonable searches and seizures extends to automobiles, since they, like houses, legitimately serve as repositories for per- sonal effects and belongings of the own- ers and occupants, this is immaterial to the question presented in the case at bar. No articles of evidence separate from and independent of the cars themselves were obtained as a result of the police exami- nation, as was true in such cases as Pres- ton v. United States, 376 U.S. 364, 84 S. Ct. 881, 11 L.Ed.2d 777 (1964), and Coop- er v. State of California, 386 U.S. 58,

---

2. A shotgun and a box of shells were seized by the police as a result of a search of the cars at the time Edge was arrested, but they were not introduced in evidence at trial and the legality of this search is not in issue. Subsequent to the recordation of the doorpost serial numbers, an examination of the cars was made by the F.B.I. However, the only evidence so obtained and used at trial was of the license numbers of the cars. Viewing the license tags affixed to an automobile fully available to public obser- vation is not a "search." United States v. Williams, 314 F.2d 795 (6th Cir. 1963); Lundberg v. Buchkoe, 338 F.2d 62 (6th Cir. 1964); Cotton v. United States, 371 F.2d 385 (9th Cir. 1967).

87 S.Ct. 788, 17 L.Ed.2d 730 (1967). In Cotton v. United States, 371 F.2d 385 (9th Cir. 1967), where subsequent to defendant's arrest on vagrancy charges, his car was impounded and the serial number recorded by state and federal authorities acting without a warrant, it is stated (393–394):

"Agent Howerton's examination of the car did not violate Cotton's constitutional rights. None of the contents of the car was used as evidence against Cotton at his trial; indeed, none was removed. None of the contents was used to obtain evidence against him. Only the serial number was thus used. If the agent had found any article or paper in the car, and such evidence had been used against Cotton at his trial or to discover other evidence, we would have a different case. * * * Here, only the serial number was used. We incline to agree with Judge Pickett of the Tenth Circuit in his dissent in Simpson v. United States, supra, 346 F.2d [291] at 296–97, that it is not a search at all, under such circumstances as we have here, merely to check that number in order more positively to identify the car. This, we think, is quite different from looking for evidence that may have been placed in the car by its possessor. When Cotton acquired the car, the serial number and motor number came with it. And we would limit the right to check to those cases in which there is a legitimate reason to do so.

"We have no doubt that here, even if the mere opening of the door to look at the number was a search, it was a reasonable one. The agent had reliable information from the Las Vegas police that the car was stolen [the authorities here had probable cause to believe the cars had been stolen], and it was entirely reasonable for him to check the car before sending out his inquiry. It is true that he could have obtained a warrant. And if he had found and used evidence that Cotton might have placed in the car, we would hold that he should have done so. But we are of the opinion that, when a policeman or a federal agent having jurisdiction has reasonable cause to believe that a car has been stolen, or has any other legitimate reason to identify a car, he may open a door to check the serial number, or open the hood to check the motor number, and that he need not obtain a warrant before doing so in a case where the car is already otherwise lawfully available to him."

■■ It is here concluded and held that an examination of an automobile properly in police custody is not a search thereof, and that evidence of the serial number of such car is not excludable from evidence because it was obtained in the course of such an examination.

It is the government's further contention that even had this evidence been excludable on the objection of Edge, appellants have no standing to make such an objection.

■ The core of the Fourth Amendment prohibition against unreasonable searches and seizures is the right of privacy. E.g., Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947); Wolf v. People of State of Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949); Mapp v. Ohio, 367 U.S. 643 (1961). It has been noted that this is a personal right. See Williams v. United States, 323 F.2d 90 (10th Cir.), cert. denied, 376 U.S. 906, 84 S.Ct. 659, 11 L.Ed.2d 605 (1963). The purpose of the rule excluding evidence obtained as a result of an illegal search is "to deter— to compel respect for the constitutional guarantee in the only effectively available way—by removing the incentive to disregard it." Elkins v. United States, 364 U.S. 206, 217, 80 S.Ct. 1437, 4 L.Ed. 2d 1669 (1960). See also Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); Mapp v. Ohio, supra. It is clear that no rights of appellants were violated when the police searched the cars in Edge's possession.

■ A defendant in a criminal action who claims no possessory or proprietary interest in either the premises searched

or the evidence seized lacks standing to challenge the legality of the search or seizure. See United States v. Thomas, 342 F.2d 132 (6th Cir.), cert. denied, 382 U.S. 855, 86 S.Ct. 105, 15 L.Ed.2d 92 (1965); Cf. Draper v. State of Maryland, 265 F.Supp. 718 (D.C.Md.1967); this is unaffected by the fact that the search was directed at another who has either been charged with, or is allegedly connected with the same crime and who would himself have standing to object. Diaz-Rosendo v. United States, 357 F.2d 124 (9th Cir.), cert. denied, 385 U.S. 856, 87 S.Ct. 104, 17 L.Ed.2d 63 (1966) (En Banc) (charges against codefendant severed from trial); United States v. Granello, 243 F.Supp. 325 (S.D.N.Y. 1965), aff'd, 365 F.2d 990 (1966), cert. denied, 386 U.S. 1019, 87 S.Ct. 1367, 18 L.Ed.2d 458 (1967) (conspiracy count against codefendant dismissed; motion to suppress granted as to said codefendant who had been charged with other offenses); Granza v. United States, 377 F.2d 746 (5th Cir.), cert. denied, 389 U. S. 939, 88 S.Ct. 291, 19 L.Ed.2d 292 (1967) (two admitted coconspirators who were not shown to have been indicted); Armada v. United States, 319 F.2d 793 (5th Cir.), cert. denied, 376 U.S. 906, 84 S.Ct. 659, 11 L.Ed.2d 605 (1963) (codefendant failed to appear for trial). As stated in Jones v. United States, 362 U.S. 257, 261, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960):

"In order to qualify as a 'person aggrieved by an unlawful search and seizure' one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else. Rule 41(e) [F.R.Cr.P., 18 U.S.C.] applies the general principle that a party will not be heard to claim a constitutional protection unless he 'belongs to the class for whose sake the constitutional protection is given.' [People of State of N.Y. ex rel.] Hatch v. Reardon, 204 U.S. 152, [160, 27 S.Ct. 188, 51 L.Ed. 415]. The restrictions upon searches and seizures were obviously designed for protection against official invasion of privacy and the security of property. They are not exclusionary provisions against the admission of kinds of evidence deemed inherently unreliable or prejudicial. The exclusion in federal trials of evidence otherwise competent but gathered by federal officials in violation of the Fourth Amendment is a means for making effective the protection of privacy."

The Court then held that a defendant "legitimately on premises where a search occurs may challenge its legality * * *" (Id. at 267, 80 S.Ct. at 734) and that a defendant has standing to raise the legality of the seizure of property in "a prosecution turning on [its] illicit possession." Id. at 263–265, 80 S. Ct. at 732.

Here appellants were jointly tried with Edge, who clearly had standing to challenge the validity of the search of the automobiles in his possession, and who did object to the introduction of the fruits of that search at trial. Appellants thus rely upon McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L. Ed. 153 (1948) in support of their contention that they too have standing to question the legality of the search of the cars.

In McDonald, investigating authorities gained entrance to McDonald's rooming house without a warrant and found him and a guest, Washington, in possession of numbers slips, piles of money and an adding machine. The evidence thus seized from McDonald's room was used to convict both defendants of running a lottery. After holding that denial of McDonald's motion to suppress was erroneous, the Court, in an opinion written by Justice Douglas and joined in by three other Justices, stated (p. 456, 69 S.Ct. p. 193):

"Even though we assume, without deciding, that Washington, who was a guest of McDonald, had no right of privacy that was broken when the of-

ficers searched McDonald's room without a warrant, we think that the denial of McDonald's motion was error that was prejudicial to Washington as well. * * * If the property had been returned to McDonald, it would not have been available for use at the trial."

The case has been accepted for the "principle that the erroneous denial of a pretrial motion to suppress is prejudicial not only to the defendant who made the motion but to his codefendant as well if the illegally seized material is the basis of evidence used against the latter at trial." Rosencranz v. United States, 334 F.2d 738, 739 (1st Cir. 1964). See also Hair v. United States, 110 U.S.App.D.C. 153, 289 F.2d 894 (1961); Schoeneman v. United States, 115 U.S.App.D.C. 110, 317 F.2d 173 (1963); Gillespie v. United States, 368 F.2d 1 (8th Cir. 1966).

It is not clear from the Court's opinion in *McDonald* why it was *error* to admit the evidence against Washington (there being no doubt that the admission was prejudicial). One answer suggested by the Court in its statement that had the property "been returned to McDonald, it would not have been available at the trial," has generally been discounted in subsequent decisions. See Rosencranz v. United States, supra, 334 F.2d at 740–741, n. 3;[3] United States v. Granello, supra, 243 F.Supp. at 327–328. But see United States v. Lee Wan Nam, 274 F.2d 863 (2d Cir.), cert. denied, 363 U.S. 803, 80 S.Ct. 1236, 4 L.Ed.2d 1147 (1960). Moreover, as *McDonald* is read in many of the cases cited above, the purported rights conferred upon those who would otherwise be in no position to object to the introduction of the allegedly illegally obtained evidence are derivative or secondary in the sense that they depend upon a timely objection by the party with standing. See also, United States v. Serrano, 317 F.2d 356 (2d Cir. 1963).

It has been suggested that "the Supreme Court may itself have had later doubts as to the scope of McDonald * * *." Rosencranz v. United States, supra, 334 F.2d at 741 (concurring opinion). This same view is expressed by Judge Friendly in United States v. Bozza, 365 F.2d 206, 223 (2d Cir. 1966), where he states with reference to Mr. Justice Douglas' opinion in *McDonald:*

> "[O]nly Justices Frankfurter, Murphy and Rutledge joined in it. Mr. Justice Frankfurter also joined in Mr. Justice Jackson's concurring opinion which went on the ground taken as one basis for the later decision in *Jones,* that as a guest on the premises Washington could 'expect the shelter of the rooftree he is under against criminal intrusion.' * * * Mr. Justice Frankfurter's subsequent formulation for the whole Court in the *Jones* case seems inconsistent with Mr. Justice Douglas' rationale in McDonald, of which the Court made no mention in *Jones* despite citation by the parties. The portion of Wong Sun v. United States, 371 U.S. 471, 492, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), upholding the admission against Wong of the narcotics seized from Yee, as a result of the illegal arrest of Toy, despite the parties' citation of McDonald, is likewise inconsistent with a rule that if evidence is subject to suppression at the instance of one defendant, it must be open to challenge by all." (Footnote omitted.)

The need for increasing the deterent effect of the exclusionary rule by applying it to those who are not embraced within today's relatively broad concept of "a person aggrieved" under Rule 41

---

**3.** "The government argues that since the seized property was contraband, it would not have been returned * * * and thus would have been still available as evidence. Such a view may perhaps be implied from the statement by the Supreme Court in McDonald * * *. We agree with the District of Columbia Court that 'this implication [is] unsound and [we] do not understand the Supreme Court to have meant McDonald to apply only in those cases in which the property could have been returned rather than suppressed as evidence.' Hair v. United States, supra, 289 F.2d at 897 n. 12."

(e), F.R.Cr.P., might well be doubted.[4] As stated in United States v. Bozza, supra, 365 F.2d at 223:

"The values that the Fourth Amendment protects are sufficiently advanced by excluding the results of illegal searches and seizures at the behest of 'victims' in the broad sense the Supreme Court has given that term; we see no important purpose to be served by holding that a thief who has left evidence of his crime on the premises of a confederate is subrogated to the latter's right to complain of a search and seizure, so that he may exercise this although the confederate has not elected to do so or to pursue an election once made. * * * Indeed, we perceive no reason why, even if an aggrieved person has secured suppression to which he is entitled, the evidence should be forever clothed with immunity from subpoena in the prosecution of another who was without standing to obtain this."

In the Bozza case, a search of the home of Guzzo, one of several codefendants, resulted in the seizure of certain evidence later introduced at trial. Guzzo, who had unsuccessfully moved for suppression of the evidence, pled guilty after taking the stand in his own defense toward the end of the trial and did not appeal. In rejecting the appellants' argument that "if any defendant is entitled to suppression, erroneous denial of a motion on his behalf is error as to all," the court held that the evidence had been properly admitted on the alternative ground that none of the appellants had standing to object to the receipt of the evidence seized. A search of Guzzo's car incidental to his allegedly illegal arrest was also attacked by several appellants. The court held that none of them, except the appellant who owned the evidence seized, had standing to challenge the search and seizure. Finally, a third search of the

home of codefendant Kuhle was attacked by four appellants, three of whom were co-owners of the evidence seized. Although the court, as in its prior rulings, found the search and seizure to be valid, it "disregarded" the contention of the appellant lacking ownership interest because of his lack of standing. See also Staples v. United States, 320 F.2d 817 (5th Cir. 1963).

■■■ In a joint trial involving several defendants, the situation to which McDonald and its progeny is limited, the admission of illegally seized evidence against those normally without standing to assert the invalidity of the search would, as a practical matter, also constitute at least a partially-effective admission of the evidence against the party with standing and entitled to have the evidence suppressed; a jury instruction to disregard the evidence against the latter could not be completely effective. However, the defendant with standing could very likely effect a separate trial by moving for severance when and if his motion to suppress is granted. Moreover, a decision that appellants here lack standing cannot significantly undermine the deterent effect of the exclusionary rule upon police unlawfulness, in view of the principle that evidence which is illegally seized from one person may properly be admissible against a third party who is tried separately. This is particularly true since, as noted above, the defendant who independently has and successfully invokes the right to move for suppression, would normally be successful in obtaining a severance to avoid possible prejudice. Had each defendant in the instant case been tried separately, or had Edge been granted a separate trial, appellants clearly would have lacked standing to object to the introduction of the fruits of the "search" of the cars. To hold to the contrary at this time, merely because of the joint trial, would

---

4. Were McDonald to arise today, the decision to exclude the illegally seized evidence as to Washington (the guest), could undoubtedly be based upon the conclusion that since he was "legitimately on the premises searched," the search was directed at him. Cf. MacKenzie v. Robbins, 248 F.Supp. 496 (S.D.Me.1965), rev'd on other grounds, 364 F.2d 45 (1966).

give them a windfall to which they are not justly entitled.

■■■■ The present record establishes that appellants, who were miles from the situs of the "search" conducted by the Jackson, Tennessee, police, claim no interest in the cars which were in Edge's possession. Appellants were not ones "against whom the search was directed," nor were their rights of privacy impaired in any manner. Accordingly, it is here determined that they lack standing to challenge the manner in which the serial numbers of the automobiles in question were obtained.

Appellants' second contention is that the records of the Chicago Police Department, which reflected that the cars recovered from Edge had been reported stolen, had improperly been admitted into evidence under the Federal Business Records Act to establish that the cars had in fact been stolen. Although the owner of the automobile which was the subject of Count One of the indictment testified at trial that his car had been stolen, the owner of the second vehicle which was the subject of Count Two was unavailable at the time of trial and the above mentioned police records constituted the entire evidence on this point.

■■■■ It is settled that police reports are "business records" under the Federal Business Records Act, 28 U.S.C. § 1732. Bridger v. Union Ry. Co., 355 F.2d 382 (6th Cir. 1966); cf. LaPorte v. United States, 300 F.2d 878 (9th Cir. 1962). This is not, however, determinative of the question of whether the reports were properly admitted in the instant case for the purpose tendered.

■■■■ It was the recognition that records kept in the ordinary course of business are unusually accurate and reliable that forms the basis of the exception to the hearsay rule embodied in the traditional Shop Book Rule. Absent any type of Shop Book Rule, out of court statements contained in business records would be inadmissible over a hearsay objection. It has thus been stated that one of the purposes behind section 1732 is to permit the business record to be introduced into evidence in substitution for the person making the report. United States v. New York Foreign Trade Zone Operators, Inc., 304 F.2d 792 (2d Cir. 1962). Under this approach, and absent an additional exception to the hearsay rule, had the police officer who made the stolen car report in this case been called to testify, he would not have been permitted over objection to relate what he had been told by the purported owner of the cars, for the purpose of establishing the truth of the matter asserted. As stated in Gorden v. Robinson, 210 F.2d 192, 198 (3rd Cir. 1954) (En Banc), "a record, to be admissible [under the Business Record Act, then 28 U.S.C. § 695], should derive from an efficient clerical system and should be of such a nature that it would be competent evidence if testified to by its maker."

■■■■ Another approach to the problem is the consideration of the factor of personal knowledge by the entrant of the business record. Under the common law rule, admissibility depended upon the entrant having personal knowledge of the facts set forth in the record offered into evidence. See Chaffee v. United States, 85 U.S. 516, 541–543, 21 L.Ed. 908 (1873). However, the Federal Business Record Act, as well as the Model Act upon which it is based, after providing that the record must be made in the regular course of business, states:

"All other circumstances of the making of such writing or record, *including lack of personal knowledge by the entrant or maker,* may be shown to affect its weight, but * * * shall not affect its admissibility." (Emphasis added.)

With reference to this provision, Professor McCormick states:

"This could be interpreted as abolishing the requirement of first-hand knowledge by one whose job is to know the facts. The more reasonable interpretation, however, is to read 'entrant or maker' as meaning the recorder only, and thus merely making

clear that one who makes the record on reports of others need not know the facts without broadening (beyond the probable intent of the drafters) the content of this hearsay exception to embrace records founded on reports by one who has no business duty to know the facts." McCormick, Evidence, § 286, p. 602 (1954).

Courts construing section 1732 have taken varying positions, a summary of which would serve little purpose here, regarding the admissibility of business records containing hearsay statements. In a relatively recent case in which the issue of the admissibility of a police accident report containing possible hearsay statements by bystanders arose, it was stated:

"These acts were intended to make admissible records which, because made pursuant to a regular business duty, are presumed to be reliable. The mere fact that recordation of third party statements is routine, taken apart from the source of the information recorded, imports no guaranty of the truth of the statements themselves. There is no reason for supposing an intention to make admissible hearsay of this sort. So to construe these statutes would make of them almost limitless dragnets for the introduction of random, irresponsible testimony beyond the reach of the usual tests for accuracy."

Yates v. Bair Transport, Inc., 249 F. Supp. 681, 683 (S.D.N.Y.1965), citing Note, Revised Business Entry Statutes: Theory & Practice, 48 Colum.L.Rev. 920,

926–27 (1948). The reasoning expressed in *Yates* is sound and equally appropriate here. It is also in accord with the rule in this Circuit as set forth in Schmeller v. United States, 143 F.2d 544 (1944). In that criminal action, where business records containing hearsay were admitted into evidence under section 695, Title 28 U.S.C., this court stated (p. 550):

"Section 695 in no way repealed the ordinary requirements of relevancy and competency. The District Court should have examined and ruled upon each paper separately, and should have excluded the hearsay and other incompetent evidence."[5]

See also Gencarella v. Fyfe, 171 F.2d 419 (1st Cir. 1948), where the court held that the admission into evidence of an entire police accident report which contained statements based upon the officer's own observations as well as witnesses' hearsay statements was erroneous.

In accordance with the foregoing, it is here determined that a police report is not admissible under the Federal Business Records Act for the sole purpose of establishing the truth of the matter asserted by a third party informant. Were it relevant, the police record in evidence would of course be admissible as proof that the car to which it referred had been reported stolen.

It follows that the judgment of conviction of both appellants under Count Two of the indictment must be reversed since there is no competent evidence tending to show that the automobile specified therein had in fact been stolen.

5. In Continental Baking Co. v. United States, 281 F.2d 137 (6th Cir. 1960), it was stated that hearsay statements contained in a business record affects the weight of the evidence rather than the admissibility. However, since the court conditioned the admissibility of the records upon the conclusion that the statements therein were admissions by a party defendant, reliance upon the Federal Business Records Act was unnecessary. See McCormick, Evidence § 281, pp. 593–97 (1954). Similarly, in *Bridger v. Union Ry. Co.*, 355 F.2d 382 (6th Cir. 1966), where Continental Baking Co., supra, was cited for the principle that "incorporation of hearsay statements * * * in an otherwise admissible business record does not preclude their admissibility under Section 1732," reference to the Federal Business Records Act was not required since the records there "were offered not to establish the truth of what they contained, but only the fact that such statements and reports were made and were available to the Railroad." 355 F.2d at 392.

Since appellants' remaining contentions have been considered and are found to be without merit, the judgment based upon Count One of the indictment is affirmed.

Affirmed in part and reversed in part.