831 F.2d 298
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Edwin John HAGEN, Defendant-Appellant.
 No. 86-1465.
 United States Court of Appeals, Sixth Circuit.
 Oct. 23, 1987.
 
 Before CORNELIA G. KENNEDY, RYAN and ALAN E. NORRIS, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 Edwin John Hagen appeals his jury conviction for obstructing the administration of justice and making false statements before the grand jury in violation of 18 U.S.C. Sec. 1503, 1623. Hagen contends that the district court erred in (1) admitting highly prejudicial police reports into evidence, and (2) in permitting testimony that he refused to respond to police interrogation after he was arrested and advised of his rights. Hagen further argues that the district court abused its discretion (3) in denying the defense access to the entire transcript of a prosecution rebuttal witness' grand jury testimony, and (4) in denying a continuance so that he could secure a transcript of an earlier state court trial in which he was acquitted. For the reasons that follow, we affirm Hagen's conviction.
 
 I.
 
 2
 This rather bizarre case began early in February 1984, when Sanford Gross, Hagen's stepbrother, disappeared. After Gross disappeared, Hagen asserts that two men tried to kidnap him, and a bomb was set off outside of his house. Then, Hagen was apprehended by the police and found to be in possession of two "freshly cut" keys fitting the trunk and ignition of a 1983 Pontiac Trans Am, registered to Gross and reported stolen. He was prosecuted in a Michigan state court for receiving and concealing stolen property. In that case, the jury returned a verdict of acquittal.
 
 
 3
 At about the same time, a federal grand jury was impaneled to investigate Gross' disappearance and various other possible offenses, including the interstate transportation of stolen vehicles and violations of the explosives laws. Hagen testified before the grand jury that on February 1, 1984, he delivered wood to Tim Rushing's house in Michigan and was not in the vicinity of Chicago, Illinois where Gross lived and where the alleged thefts occurred. Hagen further testified that on February 2, 1984, he delivered a heater core to Tom Boltz, also in Michigan, for repair and received a receipt, and that he had "no knowledge of and had not participated with William Varellas or others in planning to steal or stealing property or vehicles from Sanford Gross or the Heritage Brick Company in or around Chicago, Illinois and transporting them into Michigan."
 
 
 4
 Rushing appeared before the grand jury and testified that Hagen had never delivered wood to his house; Boltz testified that Hagen had not delivered a heater core for repair and that he had not prepared the receipt that Hagen submitted to the grand jury. Both Rushing and Boltz, as well as one Peterson, testified that Hagen had requested that they inform the grand jury that he had delivered wood and a heater core on the dates in question. Hagen admits requesting that these people support his "alibi" but contends that in substance his alibi is true.
 
 
 5
 The grand jury returned a bill of indictment charging Hagen with impeding the administration of justice and giving false testimony under oath in violation of 18 U.S.C. Sec. 1503, 1623. Counts I and II charged that Hagen endeavored to suborn perjury by instructing Rushing and Boltz to give false testimony. Counts III and IV charged that Hagen gave false testimony concerning his whereabouts on February 1 and 2, 1984. Count V, which is the real controversy in this case, charged Hagen with making false declarations regarding his participation in a number of thefts: a theft of personal property from Sanford Gross' apartment in Illinois, a theft of a 1974 green truck from Gross' company, Heritage Brick, also in Illinois, and a theft of a 1983 Pontiac Trans Am from Gross' apartment. Hagen was tried to a jury and convicted of all charges.
 
 II.
 
 6
 We are first called upon to determine whether the district court erred in admitting police reports over Hagen's counsel's timely objection that such reports are inadmissible hearsay. It is, of course, well-established that police reports are hearsay, as Hagen contends, and in order to have the benefit of this evidence the government was obliged to advance a limited, non-hearsay purpose for its admission. Fed. R. Evid. 801. See also United States v. Graham. 391 F.2d 439, 447 (6th Cir.), cert. denied, 393 U.S. 941 (1968). Accordingly, the government proffered the reports for the limited purpose of establishing that the thefts in question had been "reported."
 
 
 7
 A police report detailing the facts of an alleged theft, which is offered only to prove that the theft was reported, says nothing whatsoever about whether or not that item was, in fact, actually stolen. As a result, such a report is not offered "to prove the truth of the matter asserted," and is simply not hearsay at all. Graham, 391 F.2d at 448. Accord United States v. Burruss, 418 F.2d 677, 67 8 (4th Cir. 1969). Consequently, the learned district judge did not err in overruling Hagen's hearsay objection.
 
 
 8
 However, even though such reports may be competent evidence to prove that an item has been reported stolen, if the report is offered only to prove that the theft was reported, the document is admissible only if the fact that a report has been made is relevant or material to the case. Graham, 391 F.2d at 448. Evidence meets the threshold test for relevancy if it has a tendency to make the "existence of any fact that is of consequence to the determination of the action" more or less probable. Fed. R. Evid. 401. In the present case, it is obvious that the police reports in question made it more probable than not that Gross reported the thefts. What is not obvious is how that fact is relevant to this case. When Hagen testified before the grand jury, he did not claim he had no knowledge of Gross having reported these thefts. He declared that he had no knowledge of the thefts. The grand jury returned an indictment charging Hagen with perjury because he "aided and participated" in the thefts. Obviously, the issue in this case was whether Hagen had knowledge of or participated in the thefts. The fact of consequence, therefore, was not whether Gross reported the thefts, but whether they actually occurred. Since there was no issue in the case about whether the thefts had been reported, the police report offered to prove that fact was not offered to prove "the existence of any fact that is of consequence to the determination of the action," and thus was irrelevant. Fed. R. Evid. 401.
 
 
 9
 We believe the police reports were inadmissible not because they were hearsay, but because they were irrelevant. Cf. United States v. Jacobson, 536 F.2d 793, 795 (8th Cir.), cert. denied, 429 U.S. 864 (1976). But because Hagen's attorney failed to make the appropriate objection at trial, he has waived the objection and therefore we will not disturb the district court's ruling on the matter.
 
 III.
 
 10
 Next, Hagen contends that the district court erred in permitting Detective Miller to testify that following Hagen's arrest, and after being advised of his rights, including, of course, his right to remain silent, he refused to answer questions concerning his knowledge of Gross' 1983 Trans Am. Over defense counsel's objection, Detective Miller testified that upon questioning, Hagen "responded to the fact possibly, but no, I don't want to talk to you about it."
 
 
 11
 Assuming arguendo the presence of constitutional error, we are satisifed that any such error was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 23-4 (1967). In a case -such as this, "the question is whether the testimony about the silence could have influenced the jury and contributed to the conviction." Hayton v. Egeler, 555 F.2d 599, 603 (6th Cir.), cert. denied, 434 U.S. 973 (1977). In light of the very substantial remaining evidence produced at trial indicative of Hagen's guilt, and in light of the district court's instruction to the jury cautioning that Detective Miller's statement not be used as evidence of guilt, we are certain that Miller's testimony did not influence the jury.
 
 IV.
 
 12
 Hagen's third assignment charges the district court with abuse of discretion in denying his request for the entire transcript of a rebuttal witness' grand jury testimony This assignment ignores the fact that the grand jury is clothed with an almost impenetrable secrecy, which requires a particularized showing of need for the disclosure of even a portion of its proceedings. See United States v. Proctor & Gamble Co., 356 U.S. 677, 683 (1958). The district court did not abuse its discretion when, after an in-camera inspection of this witness' grand jury testimony, it provided the defense with portions necessary to conduct a meaningful cross-examination.
 
 V.
 
 13
 Finally, Hagen argues that the district court abused its discretion in denying a continuance so that his newest attorney could secure a transcript of the state court trial that ended in acquittal. Hagen contends that because that trial involved the same subject matter and many of the same witnesses as the subsequent federal proceeding, he was prejudiced by the denial.
 
 
 14
 Initially, we note that had the district court denied the transcript, our review would have been very different indeed. See 18 U.S.C. Sec. 3006A(e); see also Britt v. North Carolina, 404 U.S. 226, 230 (1971). However, the district court did not refuse to authorize the transcript, but rather refused to grant a continuance of sufficient duration to have it prepared. The defense had been advised that the preparation of the transcript would take "months."
 
 
 15
 "It is well-established that the question of a continuance is within the discretion of the trial judge, based on the circumstances of the particular case." United States v. Gaither, 527 F.2d 456, 457 (4th Cir. 1975), cert. denied, 425 U.S. 952 (1976). In the present case, the district court cited its reasons for denying Hagen's request. Those reasons include the facts that this trial had previously been adjourned, at Hagen's request, three times; that Hagen's present attorney was his third appointed attorney, with at least one prior attorney having been fired by Hagen, all resulting in delay; that the present attorney had been appointed five weeks prior to this request; and finally, that the indictment had been returned nearly eight months earlier.
 
 
 16
 The "abuse of discretion" standard is very narrow and this court does not have to agree with the district court's decision not to grant a continuance in order to conclude that that decision is a sound exercise of discretion. We are persuaded that the district court did not act arbitrarily, capriciously, or without a logical basis in denying Hagen's request, and thus did not abuse its discretion.
 
 
 17
 AFFIRMED.
 
 
 18
 ---------------
 
 
 
 1 Hagen grounds this attack in 18 U.S.C. Sec. 3500, the Jencks Act. However, the Jencks Act was never intended to apply to grand jury proceedings and is, therefore, inapplicable here. Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 398-99 (1959). See also Fed. R. Crim. P. 6(e)(2)(C)(i).