UNITED STATES of America

v.

William H. BROADUS, Appellant.

No. 23951.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 5, 1971.

Decided June 16, 1971.

Petition for Rehearing Denied
Nov. 1, 1971.

Robb, Circuit Judge, dissented and filed opinion.

Mr. Harvey M. Applebaum, Washington, D. C. (appointed by this Court) for appellant.

Mr. Jerome Wiener, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., John A. Terry and Charles F. Flynn, Asst. U. S. Attys., were on the brief, for appellee.

Before FAHY, Senior Circuit Judge, and LEVENTHAL and ROBB, Circuit Judges.

FAHY, Senior Circuit Judge:

This appeal is from appellant's convictions on two counts of robbery,[1] the sentences of two to six years on each count to run concurrently. Jointly indicted and tried with him, but acquitted, was Edward E. Scott. Because of error in the trial court's exclusion of certain evidence relevant to impeachment of two Government witnesses, we reverse appellant's convictions.

I

The victims of the charged robberies were Mr. Ernest Gutierrez and Mr. Martin Gottlieb. On May 2, 1969, at about midnight, as Gutierrez and Gottlieb were returning to their car parked in a lot, Gutierrez noticed several men, one of whom wore a bright orange shirt, pass them by and then turn to follow them. Gutierrez and Gottlieb hurriedly got in their car, rolled up the windows,

1. 22 D.C.Code § 2901.

and locked the doors. The men who followed them surrounded the car and threatened to kill them unless they opened the doors, which Gutierrez and Gottlieb then did. Appellant allegedly took Gutierrez's watch and a five dollar bill, while co-defendant Scott allegedly stole Gottlieb's watch.

The victims soon obtained the help of police officers Garden and Mason. As all four were returning to the scene of the robberies Gutierrez saw a large sedan with an orange-shirted driver. The officers stopped the sedan and arrested its five occupants. Upon searching the sedan and occupants the officers found a five dollar bill, folded in the same manner Gutierrez said he folded his money, in the possession of one of the five men —neither appellant nor his co-defendant Scott; and they also found Gutierrez's watch partially hidden under the front seat. Assuming that two of the five occupants of the sedan could validly have been found by a jury to have committed the robberies, a question remains whether appellant was one of the two. As the case comes to us the Government's position is that appellant personally robbed Gutierrez, not that he aided and abetted another in either robbery.

At the trial Gutierrez disclosed on cross-examination that during the morning of the trial he identified the photograph of appellant as the man in the orange shirt who stood by his side of the car and robbed him of his watch and money. At a hearing held out of the presence of the jury, Gutierrez testified that this photographic identification oc-

curred in the prosecuting attorney's office, with himself, Gottlieb, and Officer Garden present at the time. Upon the basis of the hearing, the court held that testimony concerning the out-of-court photographic identification was inadmissible under Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). The court permitted Gutierrez, however, to make an in-court identification of appellant as the man in the orange shirt who robbed him, holding that it had a source independent of the photographic identification.

Appellant strongly urges error in the finding by the trial court that Gutierrez's in-court identification of appellant as the robber was uninfluenced by the illegal photographic identification. The majority of the court believes that the solution of this problem might depend upon the outcome of this court's pending en banc consideration of United States v. Ash, No. 22340, and accordingly would not now reach that issue. We do not deem it necessary, however, that our disposition of the appeal await the *Ash* decision, since we reverse appellant's conviction for the reasons set forth in Part II.[2]

II

The Government at trial furnished defense counsel with the joint written summary of the grand jury testimony given by Gutierrez and Gottlieb, and also with the separate written summary of Officer Garden's grand jury testimony. To avoid misunderstanding, it should be made clear that the term

2. The author of this opinion would hold now that the in-court identification of appellant by Gutierrez was not supported by an independent source. The only evidence of an independent source was the testimony of Gutierrez that he "would have identified the gentleman that [he] identified," because of his "recollection of the face." Opposed to this evidence, however, was Gutierrez's prior inconsistent identification in the grand jury summary, see Part II *infra*, the question whether he had an adequate opportunity to observe fully his assailant under the lighting conditions in the parking lot,

the lapse of six months between arrest and trial without any intervening identification of appellant as the robber, and the lack of any other identification evidence such as a prior description to support his in-court identification. In these circumstances, Judge Fahy thinks that the use by the prosecuting attorney a short time before the trial of a "mug" photograph of appellant to help Gutierrez make an in-court identification was such a flagrant violation of appellant's rights as to require rejection of the independent source. *See* Stovall v. Denno, *supra*.

"grand jury summary" refers to a statement given by a witness to a clerk in the Grand Jury Section of the United States Attorney's Office describing the events about which he will testify before the grand jury. The clerk who prepares the summary does not hear the witness' testimony before the grand jury. The joint summary of Gutierrez and Gottlieb was made eleven days after appellant's arrest. Contrary to Gutierrez's trial testimony that appellant was the man in the orange shirt on his side of the car who robbed him, the summary states that the man in the orange shirt was on Gottlieb's side of the car. The summary of Officer Garden's grand jury testimony says that Scott was the man in the orange shirt who drove the sedan. At trial Officer Garden testified that appellant was the man in the orange shirt. And in his report of the robberies on P. D. Form 251, prepared a few hours at most after their occurrence, appellant is described as wearing a leather jacket.

Defense counsel sought to use the joint summary of Gutierrez and Gottlieb to impeach Gutierrez's credibility as a witness and also to use Officer Garden's grand jury summary to impeach his credibility. The trial court denied defense counsel's requests. We think this was reversible error. In view of the confused and uncertain situation which grew out of the differences between the earlier summaries of the witnesses and their trial testimony, it was important to make available to the jury their prior statements.

■ A. Counsel for co-defendant Scott objected to the use of Officer Garden's summary for impeachment purposes on the ground it would bring before the jury the officer's statement that Scott was the man wearing the orange shirt who drove the car. Counsel for appellant sought to alleviate this difficulty of Scott by excluding any reference in the summary to the driving of the car. This did not satisfy counsel for Scott. Appellant's counsel then pressed his point that "[t]his becomes crucial to our defense" and that "the jury is entitled to evaluate the probative effect of that testimony, because it puts the orange shirt on someone other than our defendant." The court nevertheless ruled that Officer Garden's grand jury summary was inadmissible, on the ground appellant's trial counsel was "not impeaching him, because the officer clarified the situation in his testimony." [3] The reference to Officer Garden's clarifying testimony was to his statement out of the presence of the jury that there was "either misidentification or a typographical error" in the summary, although he previously had testified that he had no reason to believe that this statement had been incorrectly recorded in the summary.[4]

3. Had the exclusion been on the basis of the objection made by defendant Scott's attorney, there would arise the question whether appellant was entitled to a separate trial. Both he and Scott had unsuccessfully moved for severance prior to trial. Since Scott was acquitted, the problem raised by his counsel could not arise on a new trial for appellant.

4. The transcript on cross-examination of Officer Garden reads in pertinent part as follows:

Q Mr. Garden, did you testify before the Grand Jury in this case?
A Yes, I did.
Q * * * do you recall having your testimony recorded by a clerk?
A Yes, sir.

Q Do you have any reason to think that that testimony, as recorded, was incorrect?
A Not that I can recall, sir, no, sir.
Q At that time, Mr. Garden, did you state that * * * [t]he driver was later identified as Scott? * * *
A I don't remember it, sir. It could be, but I don't remember it.
Q You do not know whether you said that or not? Could you have said that the driver was Scott?
A I wouldn't think so, no, sir.
Q * * * I will ask you to read and make sure * * * and take into account that this was May 13th, much closer to the robbery than to-day.

We agree with appellant's trial counsel that it was for the jury to evaluate Officer Garden's grand jury summary and the weight it should have on the worth of his trial testimony that appellant was the one who wore the orange shirt and drove the car. The judge was not the one to resolve the issue of credibility or reliability which arose. The province of the jury included a duty to determine whether in light of the inconsistencies it should give credence to the officer's trial testimony.

The Government contends that the trial court's ruling was within the discretion available to the court with respect to impeaching evidence. We cannot agree. The summary was too important, and its authenticity is clear. Moreover, its exclusion was not in the exercise of a discretion by the court but was based on a definitive ruling that it was not impeaching evidence.

The summary was a statement given by the witness to the Office of the United States Attorney, for use of the prosecutor making the presentation to the grand jury. Its authenticity is not weakened by the fact that the statement was made to a clerk, any more than if it had been dictated to a stenographer. Obviously the United States Attorney is interested in providing clerical personnel to take care in receiving and summarizing the statements of the witnesses.[5] The officer's explanation of the summary at trial, *see* note 4 *supra*, does not establish its inaccuracy. On his redirect examination out of the presence of the jury he testified that if he said in the summary that Scott wore the orange shirt it was a mistaken identification. That, indeed, was the issue to be decided. The jury should have been permitted to know the content of the summary along with whatever the Government might properly advance to cast doubt upon it, in order to decide whether or not to rely upon the officer's trial testimony. *Compare* Howard v. United States, 108 U.S.App.D.C. 38, 278 F.2d 872 (1960). It was out of line with the openness with which a trial should be conducted to suppress the recorded pretrial statement of the arresting officer which on its face was inconsistent with his trial testimony on a matter bearing directly upon the basic issue of identification. *See* Holmes v. United States, 277 A.2d 93 (D.C. App.1971).

The Government contends finally that if there were error in the exclusion of the summary, it was harmless, because any value in showing inconsistent statements by Officer Garden was achieved by his being questioned in the jury's presence about his police report (P.D. Form 251) prepared the night of the arrest, which reflected that appellant was wearing a leather jacket. We do not agree. It was of value to appellant to show that the officer's trial testimony conflicted with his earlier recorded grand jury summary as well as with his report on P.D. Form 251.[6]

A It is in the report. The only way that I can explain is that it is either misidentification or a typographical error. This I can't say. But the report does say that the driver was identified as Scott.

Then on redirect examination of the Officer:

Q Now, in your notes and testimony, in a couple of places you indicated Scott was the one who had the orange sweater; is that incorrect? Are you saying that it is incorrect now?

A Yes, sir. I do not recall saying that Mr. Scott was the one. If I did, it's mistaken identification, and that's the way I have to say it.

5. The statement was supplied by the Government to the defense, with no qualification at that time as to its authenticity. The officer's subsequent testimony out of the jury's presence did not, without more, afford a basis for exclusion of the summary, along with such testimony before the jury as the officer might give as to its accuracy.

6. We also cannot agree with the Government's argument that the trial court's ruling was "accepted" by appellant's trial counsel. The Government relies upon defense counsel being recorded as saying to the judge, "I will accept the latter part

B. Defense counsel's attempted use of the joint summary of the grand jury testimony of Gutierrez and Gottlieb to impeach Gutierrez's credibility at the trial was denied by the trial court on the ground it was not possible to determine which statements in the summary were made by Gutierrez and which by Gottlieb. This reason we think was inadequate to deny use of the statement to the defense.

Gutierrez and Gottlieb were jointly the victims of the robberies. The inconsistencies in the summary with Gutierrez's trial testimony, see p. 4 supra, gave it impeaching character. The prosecution, of course, could endeavor to show at trial that there was nothing in the summary which could be attributed to the witness Gutierrez alone. Entirely to discard the summary, however, merely because it was joint is not a sufficient basis for excluding this valuable evidence. Professor Wigmore has stated: "The utterance may be in form of a *joint statement* by the witness, signing a document with other persons. If the statements did not accurately represent his own belief, he may absolve himself by explanation * * *." [Footnote omitted] 3A Wigmore, Evidence § 1040(4) (Chadbourn rev. 1970) (Emphasis in original).

C. The uncertainty and confusion due to the inconsistencies between Officer Garden's and Gutierrez's grand jury summaries and their trial testimony, shown by evidence disclosed to the trial judge but excluded from the jury, if known to the jury could well have created a reasonable doubt as to whether appellant robbed Gutierrez. We think the summaries were essential to a full and fair disclosure to the jury of the available evidence bearing upon the charges against appellant.

Reversed.

ROBB, Circuit Judge (dissenting):

I would affirm the conviction.

The summaries of testimony, which the defendant proposed to use to impeach the witnesses, were not signed by the witnesses, shown to them or approved by them as accurate. The statement of one witness, that he had no reason to think the summary incorrect, did not mean that he was acknowledging the accuracy of a statement that he had never seen. The summaries were simply memoranda prepared by a clerk in the office of the United States Attorney, recording his understanding of what the witnesses told him. It follows that the admissibility of the statements can be sustained only by the application of the doctrine of Howard v. United States, 108 U.S.App.D.C. 38, 278 F.2d 872 (1960).

In the *Howard* case we held that a summary of the testimony presented at a preliminary hearing, which summary the United States Commissioner filed with the clerk of the district court pursuant to Rule 5(c) Fed.R.Crim.P., was admissible as an official document. I think we should not extend this rule to include a summary prepared by a clerk in the office of the prosecutor. There are obvious distinctions between an official summary prepared and filed by a judicial officer and a memorandum written by a prosecutor's clerk. Clerks summarizing the statements of witnesses frequently work in haste and under pressure, and as a result their summaries may be inaccurate in some details. I would not extend the rule of the *Howard* case to such summaries. If a defendant proposes to impeach a witness by proof of a prior inconsistent statement to a prosecutor's clerk, then the defendant should put the clerk on the stand to testify that the witness made the inconsistent statement. Moreover, since the witnesses here had testified

---

of your ruling." The context convinces us that what counsel said was that he "will except" to the ruling. This is confirmed by counsel's subsequently request-

ing the court to "reconsider" its earlier ruling, saying, "I would like to renew my request."

before the grand jury, counsel for the defendant could have obtained the grand jury transcript, the best and most accurate record of what the witnesses had said. Introduction of the secondary material contained in the clerk's memorandum was therefore unnecessary in fact as well as unjustified in law.

Viewing the record as a whole, I think the evidence established that the appellant was a member of the gang that surrounded and robbed the complaining witnesses. There is no doubt of his guilt. If there was error—and I think there was not—it was harmless.