UNITED STATES of America

v.

Joseph E. SMITH, Appellant.

No. 74–1446.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 14, 1975.

Decided Oct. 23, 1975.

Roy F. Perkins, Jr., Washington, D. C. (appointed by this court), for appellant.

Michael A. Pace, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., and John A. Terry, James F. McMullin, and John J. Mulrooney, Asst. U. S. Attys., were on the brief, for appellee.

Before WRIGHT and ROBINSON, Circuit Judges, and DAVIS,* Associate Judge.

**J. SKELLY WRIGHT, Circuit Judge:**

Appellant was convicted in the District Court of robbery in violation of 22 *D.C. Code* § 2901 (1973) and sentenced to eight years imprisonment pursuant to the Youth Corrections Act, 18 U.S.C. § 5010(c) (1970). In this court he charges the District Court with reversible error in refusing to admit into evidence Police Department Form 251, the official report of the police officer who received the initial complaint of the robbery, and the transcript of that officer's subsequent radio broadcasts. He further claims the court compounded its error by failing to admit the P.D. Form 251 following a specific request from the jury. We agree the District Court was in error, and we remand the case to the District Court for further proceedings.

**I**

Appellant was accused of robbing at gunpoint one James Williams, a taxi driver, in his cab shortly before 8:00 a. m. on March 18, 1971. Appellant was charged with armed robbery, 22 *D.C.* Code §§ 2901, 3202 (1973), robbery, 22 *D.C.Code* § 2901, and assault with a dangerous weapon, 22 *D.C.Code* § 502 (1973). At trial Williams testified that he picked appellant up in the vicinity of 58th and East Capitol Streets and was told to take him to 529 51st Street, N. E., a boarded-up and deserted apartment in a two-building complex. Upon arriving at that address, appellant allegedly displayed a pistol and demanded Williams' money. Williams turned over $28.00 in bills and coins, whereupon his assailant left the cab demanding that Williams drive on and not look back. Disobeying this instruction, Williams waited until his assailant was out of sight and then backed his cab up in time to see the robber enter an apartment in the building in the complex facing that containing 529. Because of the angle at which he was watching, Williams could not be certain exactly which apartment was entered, but he testified that it had to be one of two possibilities. One of the two was 527 51st Street, where appellant lived with his mother and sisters.

After circling the block Williams was able to locate and stop a police car driven by Officer John T. Carr. He reported the robbery to Officer Carr and described the robber. Officer Carr recorded this information on his Form 251 and then broadcast the report to the police dispatcher. Thereupon Carr and Williams returned to the apartment complex where they were joined by other officers who had monitored the radio dispatch. Because the officers misunderstood Williams' directions as to which building the robber had entered, they were concentrating their attention on the building containing Apartment 529 when appellant emerged from Apartment 527. Officer Roy J. Miller, who was just leaving Apartment 521, observed appellant's exit and noted that he matched Williams' description. Simultaneously Williams, who was waiting in a police car, noticed appellant and immediately identified him as his assailant, whereupon appellant was arrested. The police never searched

---

* Of the United States Court of Claims, sitting by designation pursuant to 28 U.S.C. § 293(a).

appellant's apartment, or sought a warrant to do so, and the money and the gun were never recovered.

At trial the crucial evidence against appellant was Williams' identification. Williams was absolutely certain that appellant was his assailant, testifying not only that he identified him at the second sighting immediately after the robbery, but that he had seen appellant around the neighborhood over a four- or five-year period. Williams testified that he visited with a friend approximately once a week over this period in an apartment in the same complex as appellant's, and that he had frequently seen appellant standing on the street. He testified that he recognized appellant as soon as he picked him up and thus was particularly surprised when the robbery took place, asking his assailant, "You don't know me?" Transcript (Tr.) 19.

Since Williams' identification of appellant was so important to the Government's case—indeed, it was virtually the entire case—appellant's counsel strenuously tried to impeach Williams' credibility. He did so by attempting to develop inconsistencies between Williams' stated description of the crime and his assailant, and the report as recorded on Form 251 and as broadcast to the police dispatcher. Most of the discrepancies appeared in the Form 251. They were as follows: Williams stated (1) that the robbery occurred prior to 8:00 a. m., Tr. 89, while the form listed the time as 8:05 a. m.; (2) that he picked up his passenger at 58th and East Capitol Streets, Tr. 66–67, while the P.D. 251 gave the pickup location as 50th and East Capitol Streets; (3) that the robber never touched his wallet and change purse, Tr. 66–67, while the form stated that the robber had himself removed the money from these articles; (4) that he told Officer Carr the robber was wearing Hush Puppy shoes, Tr. 87, while the form made no mention of the robber's shoes. In addition, appellant developed inconsistencies between Williams' testimony and the radio broadcast. Williams claimed (1) that assailant had a "boy's haircut," Tr. 68, while the broadcast refers to a "bush"; (2) that the robber had a "light brown" complexion, Tr. 72, while the broadcast refers to "dark" complexion.[1] Since the defense presented no witnesses, its case was largely dependent upon exploitation of these inconsistencies.[2]

When appellant sought to use the Form 251 to impeach Williams, the court refused to allow it into evidence, ruling that it was not his statement, but was hearsay and as such could not be used to impeach Williams. If it was to be admitted at all, it was to be through Officer Carr.[3] Tr. 63–64. At the conclusion

1. While counsel did not expressly refer to the radio broadcast in cross-examining Williams about these two inconsistencies, it is clear that the transcript was the source of this information. In cross-examining Officer Carr about the same two points, the defense did expressly refer to the broadcast transcript. Tr. 104–105.

 On these two points the Form 251 was supportive of Williams' testimony. On the form the robber's hair was simply described as "short," and his complexion as "brn."

2. In addition to these inconsistencies between Williams' testimony and the two documents, the defense also pointed to Williams' statement that the robber was 5'8", an assertion supported by the documents. Defense counsel described his client as being 5'2" in height, and appellant was allowed to stand so the jury could judge his height for themselves. Tr. 130–131.

3. BY MR. REED [counsel for appellant, cross-examining the witness Williams]:

 Q. Now, I ask you do you see what has been marked as Defendant's Exhibit No. 5 [P.D. Form 251]?

 [Williams]. Yes.

 Q. Do you see the name—

 MR. MULROONEY [prosecutor]: Your Honor, I am going to object to this. The officer who prepared that report is here. I think it is entirely improper for questions from this writing to be directed to this witness.

 THE COURT: What is the purpose of it?

 MR. REED: Well, Your Honor—

 THE COURT: You can't impeach him with it. It is not his statement.

 MR. REED: Well, if he made the statement, he is going to adopt the statement as the statement he made substantially. I can impeach him with it, Your Honor.

of Officer Carr's testimony, however, the court refused to allow admission of either P.D. 251 or the broadcast transcript, ruling that their use was still for purposes of impeachment and, as such, they were inadmissible hearsay.[4] Tr. 115–116. The court's comments are set out in full in the margin.

Although the court refused to allow admission of the two documents, it did allow the defense counsel to show P.D. 251 to Williams to refresh his memory about what he told Officer Carr. After reading the form, Williams said, "No, that's not correct at all." Tr. 64. On cross-examination and redirect, he attempted to explain the inconsistencies.[5] During that process, and during the subsequent examination of Officer Carr, the contents of the documents were fully aired to the jury. Tr. 64–68, 100, 102, 104–107, 112. At one point the description of the robber contained in P.D. Form 251 was read aloud verbatim.[6] Tr.

THE COURT: Well, if he is going to be willing to sign it and adopt it, that is something else. He has already said he didn't see him writing it down.

MR. REED: I believe he can read this, Your Honor, and determine whether or not this is substantially what he told the officer at that time.

THE COURT: Substantially is not good enough in a case like this. If you want to use the statement, put it in through the officer. Don't try to impeach him with something another person wrote down.

MR. REED: Well, I am going to have to recall this witness, then, Your Honor, because it's his statement; it's not the officer's.

THE COURT: Is it signed?

MR. REED: It is signed by two police officers.

THE COURT: All right. But he didn't sign it, did he?

MR. REED: No, but he made it.

THE COURT: See if you can refresh his recollection, but don't try to impeach him with it.

\* \* \* \* \* \*

THE COURT: Let him refresh his recollection and repeat what he did tell the officer, but do not try to impeach him from somebody else's statement.

Tr. 63–65.

4. MR. REED: I would move both the 251 and the transcript into evidence at this time, Your Honor.

MR. MULROONEY: No objection, Your Honor.

THE COURT: Would you come to the bench.

(At the Bench:)

THE COURT: What is the purpose of this?

MR. REED: I just want to use them to argue as to the time of the robbery. I just want to argue with them, Your Honor.

THE COURT: They aren't material. That hasn't been substantiated.

MR. REED: The complaining witness says a different time—

THE COURT: If you are offering it to show his testimony, all you are doing is offering it for impeachment.

MR. REED: I am offering it to establish the time of the robbery.

THE COURT: You can argue that to the jury.

MR. REED: This is his statement. He has signed it.

I would like to use that, Your Honor.

THE COURT: You can argue it to the jury. But, I am not going to let this hearsay go in against the complaining witness.

Tr. 115–116.

5. On all six points Williams adhered to his version, and insisted that Officer Carr must have been in error. On the two inconsistencies derived from Officer Carr's radio broadcast, the Form 251 supported Williams' testimony. *See* note 1 *supra.* The broadcast supported his assertion that the robbery took place before 8:00 a. m. rather than at 8:05 since the broadcast itself occurred at 8:05, as is noted therein. The 58th and East Capitol Street pickup point was supported by the clerk's summary of Williams' grand jury testimony, Defendant's Exhibit 4, *see United States v. Broadus*, 146 U.S.App.D.C. 265, 267, 450 F.2d 1312, 1314 (1971), and his testimony at appellant's first trial on this charge. Tr. 117. There was no supportive evidence for Williams' assertion that the robber had never touched his wallet and change purse and that he had told Officer Carr the robber was wearing Hush Puppies. Officer Carr could not recall the last point. Tr. 109–110.

6. The full description on the form was:

N/M 17–18 yrs. Brn. Compl. 5'8" 110 lbs. short hair brn. suede coat, khaki trousers. Williams testified that "as far as I can remember" he gave Officer Carr the following description:

Negro male, about 18 or 19, and he had on brown pants and a suede jacket and Hush-Puppy shoes, and with a boy's haircut.

Tr. 22. Appellant, 18 years old at the time of his arrest, was arrested wearing khaki trousers

100. The inconsistencies were hammered home to the jury again and again by appellant's trial counsel.[7]

In addition to presenting Williams and Officer Carr, the prosecution presented the arresting officer, Officer Miller, who identified appellant as the man he arrested after Williams' on-the-scene identification. Tr. 122. Thereafter the Government rested. After the defense motion for judgment of acquittal was denied, appellant rested without presenting any evidence. Tr. 143. The next day, after closing arguments, the Government dismissed the third count of the indictment, assault with a dangerous weapon, and the court charged the jury.[8] Tr. 150–171. Several hours later the jury returned with a request for further instruction on the elements of armed robbery and for Defense Exhibit 5, the Form 251. The court denied the latter request, ruling that since the form was not in evidence the jury was not entitled to see it. The court told the jury it would have to rely on its recollection of the form as discussed in court. Tr. 172. The court denied appellant's renewed motion to introduce the documents into evidence. Tr. 179. Shortly thereafter the jury returned a verdict of not guilty on the count of armed robbery and guilty on the count of robbery. Tr. 180.

## II

■ Appellant alleges that the District Court erred in excluding the Form 251 and the broadcast transcript from introduction into evidence. He claims they are admissible as business records and may be used to impeach the credibility of the complaining witness, Williams.[9] We agree.

■ The business record exception to the hearsay rule, unlike most other exceptions, has been codified for some time,[10] 28 U.S.C. § 1732(a) (1970) and is

and Hush Puppy shoes. Both of these items were introduced by the Government, over defense objections, into evidence and identified by Williams as similar to those worn by his assailant. Tr. 26–27. Appellant was not wearing a suede jacket, but rather, as he emerged from his house, was putting on a trench coat. Tr. 23. The record does not reflect appellant's hair style or complexion, but the jury was able to judge both for itself.

7. This process was so extensive as to be, in the judgment of the trial court, unduly repetitious. Tr. 91.

8. The Court instructed the jury on impeachment by prior inconsistent statements as follows:

You will undoubtedly recall that in the course of this trial, on several occasions witnesses were confronted with statements they allegedly made outside of court at an earlier date which did not seem to jibe with what they were saying on the stand. I instructed you then and I instruct you again now that it is for you to determine whether or not any of those prior statements were in fact inconsistent with what the witness was saying on the witness stand. I would again advise you that the testimony of a witness may be discredited or, as lawyers say, impeached by showing that he has previously made statements which are inconsistent with the testimony he has given from the stand.

The prior statement, however, is admitted into evidence solely for your consideration in evaluating the credibility of that witness. You may consider that prior statement only in connection with your evaluation of the credence to be given to the witness' present testimony from the stand. You must not consider the prior statement as establishing the truth of any fact contained in that prior statement.

Tr. 158–159.

9. Plainly the records could properly be used to cross-examine the complaining witness Williams so as to lay the foundation for the anticipated subsequent impeachment of Williams by the maker of the records, Officer Carr C. McCormick, Evidence § 37 (1954); United States v. Hibler, 9 Cir., 463 F.2d 455, 461–472 (1972). Cf. United States v. Nobles, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141, 43 U.S.L.Week, 4815 (1975). While the trial court was not certain about the theory under which it was acting, it nonetheless allowed such cross-examination here, Tr. 65–69, 72–73, so the only issue before us is the admissibility of the documents themselves.

10. In pertinent part, the Business Records Act provides as follows:

§ 1732. Record made in regular course of business; photographic copies

(a) In any court of the United States and in any court established by Act of Congress,

contained in the new Federal Rules of Evidence (FRE) in a form similar to that in which it appeared in the United States Code.[11] FRE, Rule 803(6). The exception is intended to allow introduction of reliable and accurate records without the necessity of calling every person who made or contributed to the record. A business record is admissible whether or not the maker is available to take the stand, 28 U.S.C. § 1732.[12] While no case in this circuit has yet so held, at least five other circuits have found that a police record constitutes a business record within the meaning of the Act. *See, e. g., Salsberg v. Modern Transfer Co.*, 2 Cir., 324 F.2d 737 (1963) (Marshall, J.); *Bowman v. Kaufman*, 2 Cir., 387 F.2d 582 (1967); *United States v. Burruss*, 4 Cir., 418 F.2d 677 (1969); *United States v. Halperin*, 5 Cir., 441 F.2d 612 (1971); *United States v. Martin*, 5 Cir., 434 F.2d 275 (1970); *United States v. Wolosyn*, 9 Cir., 411 F.2d 550 (1969); *United States v. Graham*, 6 Cir., 391 F.2d 439, *cert. denied*, 393 U.S. 941, 89 S.Ct. 307, 21 L.Ed.2d 278 (1968); *Bridger v. Union Railway Co.*, 6 Cir., 355 F.2d 382 (1966). *See also Smith v. Spina*, 3 Cir., 477 F.2d 1140 (1973) (holding police record to be within common law business records exception). We adopt the approach of these circuits. While the record sought to be admitted must, of course, be shown to meet the standards of the Business Record Act,[13]

---

any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter.

All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility.

The term "business," as used in this section, includes business, profession, occupation, and calling of every kind.

28 U.S.C. § 1732(a) (1970), *repealed* Pub.L. No. 595, § 2(b), 88 Stat. 1926, 1949 (1975).

11. The new version reads as follows:

Rule 803. Hearsay Exceptions; Availability of Declarant Immaterial

* * * * * *

(6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term

"business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit. *See* note 24 *infra.*

12. Except as noted at TAN & note 15 *infra,* the Business Records Act as codified in 28 U.S.C. § 1732(a) (1970) has not been altered in any way relevant to this opinion by the repeal of that section and the adoption of FRE Rule 803(6). *See* notes 10–11 *supra,* 24 *infra.* Since § 1732 governed Smith's trial, the text of this opinion discusses that section only. The similarity of the provisions and our conclusion that the police report is admissible under the FRE, *see* note 24 *infra,* as well as under § 1732, renders unnecessary a decision as to which version would govern a new trial if one is granted.

13. In this opinion, we address both the District Court's refusal to admit Form 251 into evidence in the effort to impeach Williams at the time he testified, and the court's subsequent refusal to admit the form after Officer Carr completed his testimony concerning it. When introduction was first attempted, the form was admissible as impeachment material only if it could qualify under the Business Records Act as a record of Williams' description of his assailant, and only after a proper foundation was laid for its use as a prior inconsistent statement by Williams.

When introduction was again sought, the form could of course have been given the same treatment. However, it is conceivable that the form might have been admitted for impeachment purposes under an alternative theory—as the written component of the evidence supplied by Officer Carr that Williams previously spoke inconsistently in giving him the description which the form incorporated.

we see no reason to exclude a police record made in the regular course of business, it being the regular course of police work to make the record at issue. Thus Form 251 and the radio broadcast transcript[14] were properly admissible as business records upon a showing of their trustworthiness.

■ Broadly read the Business Records Act would appear to admit *any* hearsay contained in a business record as substantive evidence.

All other circumstances of the making of such writing or record, including *lack of personal knowledge by the entrant or maker,* may be shown to affect its weight, but such circumstances *shall not affect its admissibility.*[15]

28 U.S.C. § 1732(a) (emphasis added). By overwhelming majority, the better view of this language is that while it exempts the maker of the record from the requirement of personal knowledge, it allows admission of the hearsay only if it was reported to the maker, directly or through others, by one who is himself acting in the regular course of business, and who has personal knowledge. Thus a police record, a Form 251 for instance, is admissible as substantive evidence to show the date a crime was reported, or the fact that it was reported at all, even if the recorder was not the officer to whom the report was made. On the other hand, the complaining witness' description of the crime, recorded by the police officer in his report, is not made in the regular course of the witness' business and does not deserve the presumption of regularity accorded a business record. Therefore, that part of the Form 251 containing the witness' description is not admissible as substantive evidence under the business records exception.[16] *See Johnson v. Lutz,* 253 N.Y. 124, 170 N.E. 517 (1930) (leading case); *United States v. Burruss, supra; United States v. Graham, supra; United States v. Shiver,* 5 Cir., 414 F.2d 461 (1969); *Standard Oil Co. of Calif. v. Moore,* 9 Cir., 251 F.2d 188 (1957), cert. denied, 356 U.S. 975, 78 S.Ct. 1139, 2 L.Ed.2d 1148 (1958); *Gordon v. Robinson,* 3 Cir., 210 F.2d 192 (1954); *Gencarella v. Fyfe,* 1 Cir., 171 F.2d 419 (1948). See also, *C. McCormick, Evidence* § 286 at 602 (1954). Contra 5 *J. Wigmore, Evidence* § 1530a n. 1 at 391–392 (3d ed. 1940).

■ But while such hearsay in a business record is not admissible under the business record exception, the hearsay is admissible if it falls within any other exception. *See e. g., C. McCormick, supra,* § 286 at 603 n. 12, & § 290 at 611, and cases cited therein. Thus, for instance, the hearsay recorded by a police officer in his Form 251 might be admissible if it was an admission, a spontaneous exclamation, a dying declaration, or a

To determine the propriety of the District Court's exclusion of the form when first offered during Williams' testimony, we must determine whether the form was within the category of documents covered by the Act, and consequently admissible at that stage of the trial upon the showing which the Act requires. Since we hold in the affirmative, we have no occasion to consider the alternative theory of admissibility.

14. The transcript of a radio broadcast can be as much a business record as a written document. *See LeRoy v. Sabena Belgian World Airlines,* 2 Cir., 344 F.2d 266, cert. denied, 382 U.S. 878, 86 S.Ct. 161, 15 L.Ed.2d 119 (1965).

15. The Federal Rules of Evidence do away with this troublesome language. *See* note 11 *supra.*

16. The danger of admitting such reports has been well put:

These acts were intended to make admissible records which, because made pursuant to a regular business duty, are presumed to be reliable. The mere fact that recordation of third party statements is routine, taken apart from the source of the information recorded, imports no guaranty of the truth of the statements themselves. There is no reason for supposing an intention to make admissible hearsay of this sort. So to construe these statutes would make of them almost limitless dragnets for the introduction of random, irresponsible testimony beyond the reach of the usual tests for accuracy.

Note, *Revised Business Entry Statutes: Theory and Practice,* 48 *Colum.L.Rev.* 920, 927 (1948).

declaration against interest. *Id.* Annot., 69 A.L.R.2d 1148, 116.6 § 5. *See also* Note, *Revised Business Entry Statutes: Theory and Practice,* 48 *Colum.L.Rev.* 920, 926–929 (1948). In addition, we believe hearsay is admissible to impeach a testifying witness as a prior inconsistent statement. *Howard v. United States,* 108 U.S.App.D.C. 38, 278 F.2d 872 (1960); *Missouri Pacific Railroad Corp. v. Austin,* 5 Cir., 292 F.2d 415, 421 (1961); *Cf. Lindberg v. Short Line, Inc.,* 1 Cir., 399 F.2d 482 (1968).

■ Such is the case here. Williams' statements to Officer Carr, as recorded in the Form 251 and as broadcast over the police radio, are inadmissible to prove the truth of Williams' assertions, since Williams was not acting in the course of his business. But once the documents are established as business records, it is presumed that Officer Carr accurately transcribed and reported Williams' story. Thus the statements would be admissible to impeach Williams' present testimony, so long as the proper foundation for impeachment is laid, as it was here. The fact that Officer Carr testified does not preclude admission of the documents. A business record is admissible even if its maker testifies, for it is the record that is the most reliable evidence of what the maker heard, and of any contradiction that might impeach Williams' credibility.[17] The jury deserved to see the records.[18] *Cf. Williams v. United States,* 131 U.S.App.D.C. 153, 156, 403 F.2d 176, 179 (1968).

■ We hasten to specify the limits of our decision. We do not hold that a police record is admissible in a criminal proceeding as a business record, either as substantive evidence or for impeachment purposes, whenever the record meets the test of trustworthiness.[19] We hold only that such a record is so admissible *when offered by a criminal defendant to support his defense.* We do not believe that such records may properly be so employed by the prosecution. While confrontation clause values figure in our reasoning,[20] the primary basis for the

17. Indeed, the business record exception is desirable not only because the maker, acting in the regular course of his business, is presumed, and has every reason to be, accurate, but also because one who records many similar documents is likely to forget at a later date the circumstances surrounding the particular one at issue.

18. An alternative theory of admissibility might be grounded in the Government Records Act, 28 U.S.C. § 1733 (1970), or in the common law version of that Act that has developed in the District of Columbia. *See United States v. Broadus, supra* note 5; *Howard v. United States,* 108 U.S.App.D.C. 38, 278 F.2d 872 (1960). Because this theory is unnecessary to our resolution of this case, we do not reach this issue.

19. Of course, if the Government chooses to contest the admissibility of a report so offered it may do so on the ground that the report is not sufficiently trustworthy to qualify as a business record. To do this the Government may call and examine the officer who made the report. Thus if there were serious questions about the reliability of any given police record, the jury would not be deprived of the benefit of cross-examination of a live witness as to the accuracy of the report. The business record exception is only an evidentiary short-cut; where there is a real dispute the jury's ability to make an informed determination may always be protected.

20. Many traditional hearsay exceptions also operate as exceptions from the demands of the confrontation clause of the Sixth Amendment. *Mattox v. United States,* 146 U.S. 140, 151, 13 S.Ct. 50, 36 L.Ed. 917 (1892) (dying declarations); *Mattox v. United States,* 156 U.S. 237, 240–244, 15 S.Ct. 337, 39 L.Ed. 409 (1895) (testimony of deceased witness who had testified at former trial; *5 J. Wigmore, Evidence* § 1397 (3d ed. 1940). Indeed, we have typically applied the business records exception in criminal cases without insisting that the confrontation clause demands the testimony of the maker of the record. *See, e. g., Gass v. United States,* 135 U.S.App.D.C. 11, 416 F.2d 767 (1969) (hospital records); *Wheeler v. United States,* 93 U.S.App.D.C. 159, 211 F.2d 19 (1953), *cert. denied,* 347 U.S. 1019, 74 S.Ct. 876, 98 L.Ed. 1140 (1954) (same).

However, the admission of police records, which may at times contain written summaries of the prosecution's entire case against a defendant, *see* note 22 *infra,* poses more difficult Sixth Amendment problems. It is clear that the mere existence of a hearsay exception does not cause the confrontation clause to recede. *California v. Green,* 399 U.S. 149, 156, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). Thus confronta-

distinction is the "litigation records" doctrine of *Palmer v. Hoffman*, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943). In *Palmer* the Supreme Court affirmed a ruling by the Second Circuit that an accident report prepared by a since-deceased railroad engineer and offered by the railroad in its defense in a grade-crossing collision case did not qualify as a business record since the report was "dripping with motivations to misrepresent." 2 Cir., 129 F.2d 976, 991 (1942). The doctrine has since been applied to deny the business records exception to any document prepared with an eye toward litigation when offered by the party responsible for making the record. *See, e. g., Bracey v. Herringa,* 7 Cir., 466 F.2d 702 (1972).

While the cases involving police records as business records have not been entirely consistent in their treatment of *Palmer*, we think the rule we have suggested above—that the records may not be used by the prosecution— emerges upon analysis. In many cases where police records are offered, the litigation is civil in nature and between private parties. Thus the record has not been prepared at the behest of either party, the *Palmer* problem does not arise, and the records are routinely admitted. *See, e. g., Salsberg v. Modern Transfer Co., supra; Bridger v. Union Railway Co., supra; Smith v. Spina, supra.* Where the police records are offered by the prosecution in criminal cases, there are two independent lines of cases. In one series of cases police records have been treated as admissible business records and the *Palmer* issue has not been raised. *See United States v. Burruss, supra; United States v. Halperin, supra; United States v. Wolosyn, supra; United States v. Graham, supra; United States v. Martin, supra.* But while the issue was not raised in any of these cases, neither was it foreclosed, since in all but one case the records were ultimately excluded anyway, for one reason or another.[21] Only in *United States v. Wolosyn, supra,* was a police record offered by the prosecution admitted under the business record exception, and in that case the record, which was simply read to the jury and not sent to the jury room, was used only to prove the date on which an automobile had been reported stolen.

tion values have been found violated even when evidence was admitted under arguably recognized hearsay exceptions. *Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). The circuits have split on whether the business record exception always operates consistently with the demands of the Sixth Amendment. *See United States v. Haili,* 9 Cir., 443 F.2d 1295 (1971) (yes); *United States v. Leal,* 9 Cir., 509 F.2d 122 (1975) (yes); *McDaniel v. United States,* 5 Cir., 343 F.2d 785 (1965) (no). We think the Fifth Circuit view is the better. In *McDaniel* the court held:

> We do not believe that all documents covered by the [Business Records] Statute in all cases are admissible in a criminal trial, but the trial judge has the duty to determine in each instance whether such documents are constitutionally admissible under the Sixth Amendment guarantee of confrontation.

343 F.2d at 789. Such a balancing test is clearly appropriate. While it might be proper to admit a police record as a business record to prove the date an automobile theft has been reported to the police, *United States v. Wolosyn,* 9 Cir., 411 F.2d 550 (1969), *see* note 23

*infra,* it would strike at the core of the Sixth Amendment to admit a police report summarizing the prosecution's entire case against a defendant in the absence of the maker of the record. Such a procedure would do no less than allow the prosecution to proceed without allowing the defendant the opportunity to cross-examine what may be his sole accuser. *Cf. Barber v. Page, supra*; *Pointer v. Texas, supra.* While it may be a closer question whether such evidence is admissible if the maker testifies and is subjected to cross-examination, we do not attempt an answer since the record would be inadmissible in any case under the *Palmer* doctrine discussed in text.

**21.** The records were excluded because they were improperly offered to prove the truth of hearsay contained therein, *United States v. Burruss,* 4 Cir., 418 F.2d 677 (1969); *United States v. Halperin,* 5 Cir., 441 F.2d 612 (1971); *United States v. Graham,* 6 Cir., 391 F.2d 439, *cert. denied,* 393 U.S. 941, 89 S.Ct. 307, 21 L.Ed.2d 278 (1968), or because they were offered without authenticating testimony. *United States v. Martin,* 5 Cir., 434 F.2d 275 (1970).

■ The second line of cases excludes under the *Palmer* doctrine the use of police records when offered by the prosecution, apparently without recognizing that police records may qualify as business records. In the leading case, *United States v. Ware*, 7 Cir., 247 F.2d 698 (1957), the Seventh Circuit held:

> [E]ven if memoranda such as the ones in question are regularly prepared by law enforcement officers, they lack the necessary earmarks of reliability and trustworthiness. Their source and the nature and manner of their compilation unavoidably dictate that they are inadmissible under section 1732. They are also subject to the objection that such utility as they possess relates primarily to prosecution of suspected law breakers, and only incidentally to the systematic conduct of the police business. Cf. *Palmer v. Hoffman*, supra.

247 F.2d at 700. This rule has been accepted wherever raised. *See United States v. Frattini*, 2 Cir., 501 F.2d 1234 (1974); *United States v. Brown*, 5 Cir., 451 F.2d 1231 (1971); *United States v. Adams*, 2 Cir., 385 F.2d 548 (1967); *Sanchez v. United States*, 8 Cir., 293 F.2d 260 (1961).[22] Significantly, however, the *Ware* rule has been adopted in the Second and Fifth Circuits, which otherwise regularly admit police records as business records. Thus, although the two cited lines of cases do not explicitly recognize one another, we do not think the former line precludes application of the *Palmer* doctrine. Our analysis thus produces the following rule: "Police reports are ordinarily excluded when offered by the party at whose instance they were made," *Bracey v. Herringa, supra*, 466 F.2d at 705 n. 9, but may still be admitted as business records when, as here, they are offered against that party, the prosecution, *cf. Koninklijke Luchtvaart Maatschappij N.V. KLM v. Tuller*, 110 U.S.App.D.C. 282, 291, 292 F.2d 775, 784 (1961) (Burger, J.); *Korte v. New York, N.H. & H.R. Co.*, 2 Cir., 191 F.2d 86, *cert. denied* 342 U.S. 868, 72 S.Ct. 108, 96 L.Ed. 652 (1951) (physician's report prepared for defendant admitted when offered by plaintiff); *Pekelis v. Transcontinental & W. Air, Inc.*, 2 Cir., 187 F.2d 122, *cert. denied*, 341 U.S. 951, 71 S.Ct. 1020, 95 L.Ed. 1374 (accident report prepared by defendant admitted when offered by plaintiff); *Yates v. Bair Transport, Inc.*, S.D.N.Y., 249 F.Supp. 681 (1965), or any other party.[23] Thus despite the limitations *Palmer* imposes on the business records doctrine, we have no doubt that the police records offered

---

**22.** Some of these cases seem to take the view that quite apart from the business records exception

> it is error and ordinarily reversible error to receive an exhibit containing "a neat condensation of the government's whole case against the defendant."

*United States v. Parker*, 8 Cir., 491 F.2d 529 (1974) (Bright and Ross, JJ., separate statement of views on petition for rehearing) (emphasis in original), *quoting Sanchez v. United States*, 8 Cir., 293 F.2d 260, 269 (1961), *quoting United States v. Ware*, 7 Cir., 247 F.2d 698, 700 (1957). *See also United States v. Brown*, 5 Cir., 451 F.2d 1231 (1971). These cases all involve the admissibility of narcotics agents' summaries of the case against the defendant attached to the lock seal envelope in which confiscated narcotics were stored for trial. As the *Ware* court found, with such evidence before the jury, "The government's witnesses in effect accompanied the jury into the jury room." 247 F.2d at 700. If this is an independent ground of decision for these cases, it would add to the *Palmer* and confrontation clause rationales for excluding police records offered by the prosecution.

**23.** It may be that under this rule the police record was properly admitted in *United States v. Wolosyn*, 9 Cir., 411 F.2d 550 (1969). *See* page 18 *supra*. The record in *Wolosyn*, far from being a summary of the Government's case against the defendant, *see* note 22 *supra*, was only proof of the date an automobile had been reported stolen. Such a record may not be suspect under *Palmer* at all, since it arguably relates primarily to the systematic conduct of police business—the recording and investigation of crime—and only secondarily to prosecution of suspected law breakers. *Cf. United States v. Ware, supra* note 22, 247 F.2d at 700. Likewise, it would seem that police personnel records might be admissible under the espoused rule.

by appellant were admissible against the prosecution as business records.[24]

**24.** The same result would be reached under the Federal Rules of Evidence. Rule 803(6) contains the business records exception in much the same form as it is found in the Business Records Act. *See* notes 10–11 *supra*. Congress, which considered the FRE at great length, can be presumed to have been aware of the interpretation of the business records exception current in the courts when it approved Rule 803(6). *See* 2A *Sands, Sutherland Statutory Construction* § 49.09 (1973); *cf. Georgia v. United States*, 411 U.S. 526, 533, 93 S.Ct. 1702, 36 L.Ed.2d 472 (1973). *See also* Advisory Committee's Note to Rule 803, 56 F.R.D. 303, 309 (1972) (discussing admissibility of police records during explanation of Rule 803(6)). Of course, Congress must also be deemed to have continued the restriction the doctrine of *Palmer v. Hoffman* places on the use of police reports by the prosecution. The clear congressional intent to preclude the Government from using the reports of law enforcement personnel in a criminal trial, *see infra*, supports this conclusion.

Rule 803(8) of the FRE creates a specific hearsay exception for "public records and reports." While this provision appears to overlap rather than to diminish 803(6), *see Colvin v. United States*, 479 F.2d 998, 1002 (9th Cir. 1973); 4 *J. Weinstein & M. Berger, Weinstein's Evidence* ¶ 803(8)[03] at 803–185 (1975) ("Public records could, of course, as in the past be admitted under the regular entries exception."), it is also useful to consider the admissibility of police records under this provision. Rule 803(8) provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\* \* \* \* \* \*

(8) Public records and reports.—Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth \* \* \* (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

It is not clear whether a police report like that prepared by Officer Carr falls under 803(8)(B) or 803(8)(C). 803(8)(C) seems to be the more appropriate provision since the Form 251 contains information " . . . resulting

from an investigation made pursuant to authority granted by law." The rule's reference to "factual findings" may authorize the admission of the investigator's conclusions based on the information he derived from firsthand observers, *see J. Weinstein and M. Berger, supra*, at 803–184 to 185, but it should not be read to require that the information obtained during an investigation be interpreted by the investigator before his report can be admitted. On the other hand, 803(8)(B) may also be considered applicable since the Form 251 contained Carr's report of what he heard and saw Williams tell him.

Were we required to choose which section of the rule to apply, we would settle on 803(8)(C). That portion of the rule deals explicitly with reports based on investigations, whereas 803(8)(B)'s most natural reading is that it is concerned with officials' reports of their own firsthand observations of events. *Cf.* 120 *Cong.Rec.* H564 (daily ed. Feb. 6, 1974) (remarks of Reps. Brasco and Dennis) (originally proposed 803(8)(B) would admit as evidence against defendant police officer's report " . . . that he saw Mr. X with a gun on such and such an occasion . . ."). 803(8)(C) explicitly adopts the result we have reached: the report is admissible, but only "against the Government in criminal cases."

On its face, 803(8)(B) appears to require a different conclusion. We are convinced, however, that 803(8)(B) should be read, in accordance with the obvious intent of Congress and in harmony with 803(8)(C) to authorize the admission of the reports of police officers and other law enforcement personnel at the request of the defendant in a criminal case.

As proposed by the Advisory Committee and submitted to Congress by the Supreme Court, 803(8)(B) would have exempted from the hearsay rule " . . . reports . . . in any form, of public offices or agencies, setting forth . . . (B) matters observed pursuant to duty imposed by law." *H.R.Doc.No.*93–46, 93d Cong., 1st Sess. 29 (1973). Concerned that this language would allow the prosecution to use a report " . . . to prove its case in chief with the possibility of no other evidence being presented," 120 *Cong.Rec.* H564 (daily ed. Feb. 6, 1974) (remarks of Rep. Brasco), the House added the present language. During the debate Representative Dennis, who supported amending the proposed rule, indicated that the amended version would still allow a defendant to " . . . use the report to contradict [the reporting officer] and cross-examine him." *Id. See also id.* (remarks of Reps. Hunt and Brasco). The House's changes survived conference with the Senate, and when he explained the Conference Committee's re-

for a reason other than the business record theory raised by appellant. Officer Carr reread the Form 251 during his testimony for the prosecution. Tr. 99–100. It is well established that while a writing used to refresh a witness' memory is not ordinarily admissible, *see, e. g., Young v. United States,* 94 U.S.App.D.C. 62, 214 F.2d 232 (1954), it is properly admitted when offered by the opposing party or when the jury on its own motion requests to see it. *See, e. g., Borel v. Fibreboard Paper Products Corp.,* 5 Cir., 493 F.2d 1076, 1102–1103, *cert. denied,* 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974); 3 *J. Wigmore, Evidence* § 763 (Chadbourn rev. 1970). *Cf.* Federal Rules of Evidence, Rule 612.[25] Both validating contexts are present here—appellant offered the Form 251 and the jury requested it. On this theory alone, the Form 251, although not the radio transcript, should have been admitted at the conclusion of Officer Carr's testimony.[26]

 No matter how the new FRE are interpreted, however, it is clear that under applicable law the District Court erred in refusing to admit Defense Exhibits 5 and 6 as business records. The Government argues that exclusion was a proper exercise of the court's discretion. We disagree. Where identification is the determinative issue, and where the identification hangs upon the credibility of a single witness, impeaching evidence of the sort tendered is too important to be excluded. *Cf. United States v. Bundy,* 153 U.S.App.D.C. 191, 192, 472 F.2d 1266, 1267 (1972). Moreover, while courts do have some discretion both in admitting business records[27] and in admitting evidence "designed for impeachment of general credibility," *Collazo v. United States,* 90 U.S.App.D.C. 241, 252–253, 196 F.2d 573, 584–585, *cert. denied,* 343 U.S. 968, 72 S.Ct. 1065, 96 L.Ed. 1364 (1952),[28] in this case the District Court exercised no discretion at all. *United States v. Broadus,* 146 U.S.App.D.C. 265, 268, 450 F.2d 1312, 1313 (1971). It erroneously thought the documents were inadmissible *per se.*

 While we believe the District Court should have admitted the documents into evidence, our review of the record convinces us that their exclusion alone would not cause appellant suffi-

---

port to the House, Representative Hungate stated that "[a]s the rules of evidence now stand, police and law enforcement reports are not admissible *against* defendants in criminal cases. This is made quite clear by the provisions of rule 803(8)(B) and (C)." 120 *Cong. Rec.* H12254 (daily ed. Dec. 18, 1974) (emphasis added).

Thus, the apparently absolute language of 803(8)(B) had its origin in congressional concern that use of reports against defendants would be unfair. Moreover, as Representative Hungate's statement indicates, the prohibitory language of 803(8)(B), added on the floor of the House, should be read in conjunction with the more carefully drafted parallel provision of 803(8)(C). *See also J. Weinstein & M. Berger, supra,* at 803–186 (referring to the parts of 803(8)(B) and (C) considered here as a single restriction against the government). Since there is no apparent reason to allow defendants to use the reports admitted by 803(8)(C) but not those governed by 803(8)(B), we conclude that a police report, like that of Officer Carr, is an exception to the new hearsay rules when introduced at the request of the defense. Thus the FRE reinforce our view that the police records offered by appellant are admissible in this case.

25. Under the FRE, unlike the common law, writings used to refresh memory prior to testifying as well as those used on the stand will be admissible, in the court's discretion, on the motion of the opposing party. FRE Rule 612. Thus, as is typical, whenever an officer reviews his P.D. Form 251 prior to testifying, whether or not he refers to it on the stand, it will hereinafter be admissible.

26. The Form 251 and the radio transcript may have been admissible as well to impeach Officer Carr.

27. The court's discretion lies in judging whether the document offered has the inherent probability of trustworthiness. *LeRoy v. Sabena Belgian World Airlines, supra* note 14; *McDaniel v. United States,* 5 Cir., 343 F.2d 785, *cert. denied,* 382 U.S. 826, 86 S.Ct. 59, 15 L.Ed.2d 71 (1965); *Puggioni v. Luckenbach S.S. Co.,* 2 Cir., 286 F.2d 340 (1961); *United States v. Newman,* 5 Cir., 468 F.2d 791 (1972), *cert. denied,* 411 U.S. 905, 93 S.Ct. 1527, 36 L.Ed.2d 194 (1973).

28. *See also Howard v. United States,* 128 U.S. App.D.C. 336, 340–341, 389 F.2d 287, 291–292 (1967); *Christoffel v. United States,* 91 U.S. App.D.C. 241, 248–249, 200 F.2d 734, 740–741 (1952).

cient prejudice to warrant reversal. Williams' identification was an extremely strong one, based not only on the robbery itself, but on observing appellant with some regularity over a four- or five-year period. Thus any inconsistency between the documents and Williams' testimony was far less important than the persuasiveness with which Williams described his past sightings of appellant and certainty with which he identified him in court. More importantly, the contents of the documents were fully aired and argued to the jury. Williams and Carr were both cross-examined closely about the inconsistencies contained in the documents. While admission of the documents was the proper action, ordinarily this full airing would make any resulting prejudice to appellant harmless.

Although we think the court's improper exclusion of the Form 251 and the radio transcript ordinarily would not have been unduly prejudicial to appellant, the jury's subsequent request for Officer Carr's report changes the complexion of the issue in this case. The court responded to the request as follows:

> Officer Carr's report is not in evidence so you are not entitled to see it although, of course, it was used extensively and you can remember the testimony that came from it. You will have to rely on your recollection to that extent.

Tr. 172. The trial court is accorded considerable discretion in responding to jury requests. *Salzman v. United States*, 131 U.S.App.D.C. 393, 396, 405 F.2d 358, 361 (1968); *United States v. Toney*, 6 Cir., 440 F.2d 590, 592 (1971); *United States v. Jackson*, 3 Cir., 257 F.2d 41, 43 (1958). Moreover, the judge must exercise restraint in responding to jury requests so as to avoid giving undue emphasis to the requested evidence or testimony. *United States v. Rabb*, 3 Cir., 453 F.2d 1012 (1971). In this case, however, the court, once again, did not exercise its discretion at all. Rather, it refused the request simply because the report was not in evidence, a situation that resulted directly from the court's erroneous conclusion that the report was inadmissible. In our view that erroneous conclusion was harmless, and, without more, we would affirm. But it is the jury, and not this court, that is the trier of fact, and the jury thought the Form 251 was of sufficient importance to ask to see it. We cannot say that visual examination of Form 251 by the jury would not have affected its verdict. *See Kotteakos v. United States*, 328 U.S. 750, 764–765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). We note that the form was directly relevant to Williams' credibility. The jury was obviously concerned about that credibility because Williams was the only witness to the crime. It acquitted appellant on the armed robbery count, evidence of which depended solely upon Williams' testimony.

On the other hand, we cannot say it would have been an abuse of discretion had the trial court exercised discretion to deny the jury's request. *See Salzman v. United States, supra; United States v. Toney, supra; United States v. Jackson, supra.* We do think, however, that the jury's request was of sufficient importance to the jury that the trial court should at least have had the opportunity to rule upon it knowing the documents are admissible.[29] Accordingly, we follow the procedure of *United States v. Hairston*, 161 U.S.App.D.C. 466, 495 F.2d 1046 (1974), and *United States v. Henson*, 159 U.S.App.D.C. 32, 486 F.2d 1292 (1973) (*en banc*), and remand the case to the District Court to consider the jury request anew. If the court concludes that it

---

29. We note that the trial court did not attempt to comply with the jury's request in any manner. It could, for instance, have had read to the jury those portions of the transcript in which Williams was examined about the inconsistencies between his testimony and the documents.

would have exercised its discretion to let the jury see the documents and that its failure to do so was not harmless, it must order a new trial for appellant. Otherwise, the conviction may stand.

*So ordered.*